UNITED STATES ex rel. POTASH v. DISTRICT DIRECTOR OF IMMIGRATION AND NATURALIZATION AT PORT OF NEW YORK.

No. 206, Docket 20948.

Circuit Court of Appeals
Second Circuit.

Aug. 3, 1948.

Pressman, Witt & Cammer, of New York City (Lee Pressman, Carol King, Nathan Witt, Harold I. Cammer, Bella S. Abzug, and Ralph Shapiro, all of New York City, of counsel), for appellant.

John F. X. McGohey, U. S. Atty., of New York City, (David McKibbin and Harold J. Raby, Asst. U. S. Attys., and Robert A. Vielhaber, Atty., U. S. Dept. of Justice, Immigration & Naturalization Service, all of New York City, of counsel), for appellee.

Before AUGUSTUS N. HAND, CHASE, and CLARK, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The relator Potash was arrested on March 1, 1948, and placed in the custody of the Director of Immigration and Naturalization at Ellis Island, pursuant to a warrant charging that he was in the United States in violation of the immigration laws and subject to deportation as a member of and affiliated with an organization that advocates the overthrow by force and violence of the Government of the United States. Pursuant to the direction of the Attorney General no bail was fixed. The warrant ordered the Director of Immigration to grant Potash a hearing so as to enable him to show cause why he should not be deported according to law. On March 2, 1948 he applied for a writ of habeas corpus in a petition which the District Court dismissed.

Potash is a native of Russia. He entered this country lawfully about the year 1915—a date prior to the time of the Russian revolution—and has resided here ever since his entry. He was married in the United States, his wife is an American citizen, and the couple have an infant daughter born in the United States. Prior to his entry into the United States he never resided in any country other than Russia. He became vice-president of the International Fur and Leather Workers Union and of the Greater New York CIO Council, and at the time he was taken into custody was engaged in collective bargaining on behalf of the Furriers Joint Council of New York. The petition not only sets forth the foregoing facts but alleges that no date has been set for the holding of a hearing as directed in the warrant of detention. It is also alleged that there is no country to which he can be deported because the Soviet Republic does not permit the return of persons who left Russia prior to the revolution of 1917. The petitioner further claims that the action of the Attorney General in denying bail was arbitrary and capricious and in contravention of petitioner's rights under the Constitution and that he will be available for further proceedings if admitted to bail.

The return to the writ filed on March 3, 1948, alleged that the hearing provided for in the warrant would be accorded to the relator without delay as soon as the habeas corpus proceeding was disposed of. It further alleged that the petition for the writ should be dismissed because under Rule 18(b) of the District Court writs will not be allowed in deportation cases unless the petition shows that the Secretary of Labor (now the Attorney General) has issued a warrant of deportation. The return also alleged that the discretion of the Attor-

ney General in granting or refusing bail pursuant to Title 8 U.S.C.A. § 156 is not subject to review in the present proceeding.

After a hearing the District Court dismissed the writ of habeas corpus and remanded the relator to the custody of the Director of Immigration, but pending appeal to this court ordered him enlarged on bail in the sum of $5,000.

The relator appeals from the order dismissing the writ sued out to secure enlargement on bail pending the deportation proceeding on the ground that the discretion granted to the Attorney General in 8 U.S.C.A. § 156 was abused in that it was exercised arbitrarily and in violation of the due process clause of the Fifth Amendment of the Constitution of the United States. The provision under which the relator is sought to be deported is so far as pertinent quoted in the margin.[1] The provision under which discretion in granting bail is lodged in the Attorney General is found in 8 U.S.C.A. § 156 also quoted below.[2]

The petition for a writ of habeas corpus does not specifically meet the serious charge of the warrant of arrest that relator is a member of or affiliated with an organization which advocates the overthrow by force or violence of the Government of the United States. On this appeal his counsel argues that the deportation proceeding is based upon membership in the Communist party and that there is no ground for holding that party to be a proscribed organization and that even if such were proven mere membership would be an insufficient basis for deportation. He contends that there are no grounds for the charge which justify a denial of bail and that such action is therefore arbitrary and violates relator's rights. To show that the relator conducted himself with propriety and patriotism during the recent period of active hostilities there was evidence before the District Court of testimonials received from the Treasury Department, the Red Cross and the Citizens Defense Corps. Counsel also quotes a statement made by the District Attorney at the hearing before that court that he did not claim that relator was presently engaged in any unlawful activity and at another point said to the court that he disclaimed making any allegation that would lead one to question relator's loyalty. It is also claimed by counsel in the case of United States ex rel. Smith, 2 Cir., 169 F. 2d 753, to be decided herewith, that bail has been granted already in the cases of others held for deportation proceedings upon similar charges without any apparent reason for a distinction. Relator also contends that the denial of bail is arbitrary in that there is grave doubt whether the charge upon which deportation is sought is a proper one in view of the decisions of the Supreme Court in Bridges v. Wixon, 326 U.S. 135, 65 S.Ct. 1443, 89 L.Ed. 2103, and Schneiderman v. United States, 320 U.S. 118, 63 S.Ct. 1333, 87 L.Ed. 1796. However, we do not believe that these decisions are controlling on the present question of the denial of bail for it is premature to hold now that the government will be unable at the subsequent deportation proceedings to produce evidence which is sufficient under any limitations that those cases may be thought to impose. The decision of Attorney General Biddle to deport Bridges was reversed by the Supreme Court on the grounds that an improper interpretation of the word "affiliation" in the statute was ap-

---

[1] 8 U.S.C.A. § 137

"(g) Any alien who was at the time of entering the United States, or has been at any time thereafter, a member of any one of the classes of aliens enumerated in this section, shall, upon the warrant of the Attorney General, be taken into custody and deported in the manner provided in sections 101, 102, 105, 108, 109, 113, 115, 116, 132, 136, 138, 139, 142-156, 158-166, 168, 169, 171, 173, 175, 177, and 178 of this title. The provisions of this section shall be applicable to the classes of aliens mentioned therein, irrespective of the time of their entry into the United States."

[2] 8 U.S.C.A. § 156

"* * * Pending the final disposal of the case of any alien so taken into custody, he may be released under a bond in the penalty of not less than $500 with security approved by the Attorney General, conditioned that such alien shall be produced when required for a hearing or hearings in regard to the charge upon which he has been taken into custody, and for deportation if he shall be found to be unlawfully within the United States."

750

plied and that evidence of "membership" in the Communist party lacked a proper foundation because of incompetent evidence considered. The court stated that Congress intended that the [326 U.S. 135, 65 S.Ct. 1448] "acts tending to prove 'affiliation' must be of that quality which indicates an adherence to or a furtherance of the purposes or objectives of the proscribed organization as distinguished from mere cooperation with it in lawful activities." We cannot say that the government will not prove acts of affiliation in the case at bar of a proscribed type in accordance with the foregoing test. Likewise there may be proof of a membership in the Communist party which meets the test indicated by the opinion of the majority in the Bridges case as necessary to show unlawful "affiliation." However, though it is argued that such a type of membership is necessary, the Supreme Court has never so decided, nor do we suggest that it is required. In the Schneiderman case the Supreme Court reversed a judgment in a denaturalization proceeding which had cancelled a certificate of citizenship granted in 1927 to defendant on the ground that it had been illegally procured in that at such time he was not a person "attached to the principles of the Constitution" as required by the Naturalization Act, § 4, 34 Stat. 598, as amended. The Supreme Court held that there was insufficient proof that defendant was not attached to the principles of the Constitution or that the Communist party of which he was a member advocated the overthrow of the government by force and violence. The majority opinion expressly refused to apply the customary test of substantial evidence in support of a finding by the trier of facts and held that in a denaturalization proceeding to nullify a prior order awarding citizenship the proof must be [320 U.S. 118, 63 S.Ct. 1350] "clear, unequivocal and convincing" and commented upon the "infirmities of proof by imputation." However, the government in the present case would not be subject to such an unusual burden of proof in a deportation proceeding as was held to be specially applicable to denaturalization proceedings; nor can we assume that its evidence as to relator and the Communist party at the present date will not be of a stronger character. We do not believe that these two cases provide a basis for the charge that the government's deportation proceedings are so ungrounded as to make his denial of bail an arbitrary action.

Our decision in United States ex rel. Zapp v. District Director of Immigration, 2 Cir., 120 F.2d 762, held that the granting of bail to an alien in a deportation case during the administrative hearing is not a matter of the alien's absolute right. We there affirmed an order of the District Court denying such bail in a proceeding for deportation based upon the failure of certain German nationals to maintain the status as tradesmen upon which they were admitted to this country as non-immigrants because of their activities as foreign propagandists. We denied the alien's contention that under the provisions of 8 U.S.C.A. § 156 he had an absolute right to be admitted to bail prior to the issuance of a deportation order and we differed with the conclusion of the Sixth Circuit in Prentis v. Manoogian, 7 Cir., 16 F.2d 422, where it was held that in such cases the administrative official was required to grant bail. We instead determined that under the above section an alien's release on bail was placed by Congress at the discretion of the Attorney General. The further question whether the exercise of that discretion was subject to review by the court if claimed to be arbitrary and if so whether an abuse of discretion existed on the facts of that case was not argued in the briefs on appeal, nor necessarily involved nor alluded to in our opinion.

The District Court in the present case evidently believed that such an inquiry by the court as to the proper exercise of discretion by the Attorney General was not permitted and no such review was given. On the contrary the question of bail was left to the Attorney General's untrammeled discretion. Thus we are presented on appeal with the question whether the Attorney General's denial of bail under Section 156 pending deportation hearings is subject to review by the court on a writ of habeas corpus for abuse of discretion. A consideration of the authorities cited discloses no decision of an appellate court which has

passed on this precise question and many of the district court decisions are not pertinent.

In United States ex rel. Janavaris v. Nicolls, (D.C.Mass.), 47 F.Supp. 201, Judge Wyzanski ordered an alien to be discharged from the custody of the Immigration Authorities without bail upon a showing that a final order of deportation could not be carried out within a reasonable time, unless the Attorney General should fix bail by a prescribed date. In Moraitis v. Delany, D.C.D.Md., 46 F.Supp. 425, modified on grounds other than those before us, 4 Cir., 136 F.2d 129, Judge Chesnut appeared to recognize that an alien may be enlarged if after a reasonable time has elapsed the warrant of deportation cannot be carried out but held that such time had not elapsed in the case before him. He also decided that there were no circumstances justifying a reversal of the Attorney General's denial of bail under Section 156 but stated [Md.P.C.C., 46 F.Supp. 432]: "I am not prepared to say that unusual cases may not arise where the courts should admit to bail in a deportation case as in others where the validity of the detention is under inquiry under a writ of habeas corpus, which is the great bulwark of personal liberty against possible oppressive official action." In Colyer v. Skeffington, D.C.Mass., 265 Fed. 17, 77, 78, reversed as to other parties sub nom. Skeffington v. Katzeff, 1 Cir., 277 F. 129, Circuit Judge Anderson said: "I assume that in the ordinary case the court has no power to interfere with the discretion of the immigration authorities as to granting or refusing bail or as to the amount of bail. Some abuse of the power vested in them by the statute must be shown in order to warrant an interference by the court." He concluded that there had been an abuse of discretion and pending the deportation hearings he enlarged the aliens on a smaller bond than the one fixed by the authorities. He found that the government had caused an untoward delay in the proceedings and that there was no evidence that the aliens if released would endanger the public safety or be unavailable for further hearings. In United States ex rel. Pappis v. Tomlinson, D.C.N.D.Ohio, 45 F.Supp. 447, Judge Freed reviewed the exercise of discretion by the Attorney General in denying bail under the particular circumstances and found there had been no abuse.

The foregoing decisions and also, as it seems to us, the general spirit of our institutions make it improbable that Congress intended to give the Attorney General unlimited power over the admission to bail of aliens against whom deportation proceedings are brought. We think that it requires more than the general grant of power to fix bail in Section 156 to exempt the Attorney General from all control in the exercise of that function even if he should be shown to have acted in an arbitrary manner. This interpretation is particularly indicated in such a situation as the present where personal liberty is involved and there has been no determination that the alien is deportable. Prior to the passage by Congress in 1907 of the act empowering the administrative official to fix bail, various courts made it a practice to grant bail to aliens during deportation hearings. Act Feb. 20, 1907, 34 Stat. 904, § 20. See In re Lum Poy, C.C.D.Mont., 128 F. 974; In re Ah Tai, D.C.Mass., 125 F. 795. In our opinion that act was intended to place the general determination of granting bail in the hands of the authorities charged with the enforcement of the deportation laws as persons ordinarily best qualified to perform such a function, but was not intended to give them an absolute power, unreviewable in cases of abuse. The discretion of the Attorney General which we held to exist in the Zapp case is interpreted as one which is to be reasonably exercised upon a consideration of such factors, among others, as the probability of the alien being found deportable, the seriousness of the charge against him, if proved, the danger to the public safety of his presence within the community, and the alien's availability for subsequent proceedings if enlarged on bail. However, in any consideration of his denial of bail it should always be borne in mind that the court's opinion as to whether the alien should be admitted to bail can only override that of the Attorney General where the alien makes a clear and convincing showing that the decision against him was without a reasonable foundation. In the absence of such proof, the administra-

tive determination is final. If the Eighth Amendment to the Constitution is considered to have any bearing upon the right to bail in deportation proceedings, and this has been denied, it is our opinion that the provisions of that Amendment and any requirement of the due process provisions of the Fifth Amendment will be fully satisfied if the standards of fairness and reasonableness we have set forth regarding the exercise of discretion by the Attorney General are observed.

While the charge of arbitrary action was made by the relator, the District Court disposed of the case on the ground that an unqualified power in determining the question of bail is vested in the Attorney General. There was no hearing of the type we have outlined to determine whether there had been an abuse of discretion, nor is there any finding by the District Court as to that issue for us to consider. The record is inadequate for any final disposition by this court, and we think relator's right to show an abuse of discretion requires a remand of the case without any intimation on our part as to whether the relator should have been admitted to bail.

██ The government contends that the petition for writ of habeas corpus must fail because Rule 18(b) of the Southern District Court provides that writs will not be allowed unless the petition shows that a warrant of deportation has been issued. This rule, if applied literally, might preclude a review of the Attorney General's action in denying bail, no matter how lacking in foundation. But, it merely embodies the ordinary practice of exhausting administrative remedies before securing judicial review, and does not in our opinion affect the kind of claim asserted here. In the present case a final determination of the question of bail which has caused confinement has been made by the administrative authority, and it should be reviewed by the court now if a review is ever permissible because of a claim of an abuse of discretion. Referring to the question of the power of the District Court to admit relator to bail pending his appeal, we hold that the court had authority to do so for the reasons set forth in our opinion in United States ex rel. Paetau v. Watkins, 2 Cir., 164 F.2d 457, 460.

██ We should add that it must always be remembered that the Attorney General has been given the authority by Section 156 to determine the question of bail pending deportation proceedings and his decision is subject to review only if he has withheld bail arbitrarily. We are remanding the case because there has been no hearing as to relator's charge of an abuse of discretion or determination by the District Court of that issue. Our provision for remanding should involve no protracted trial of the merits of the deportation proceedings and the Attorney General need go no further than necessary to meet any evidence of arbitrary action that is given. Relator's contention can only succeed upon such a clear and convincing showing as would justify the District Court in holding that there has been an abuse of discretion.

For the foregoing reasons the order dismissing the writ of habeas corpus is reversed and the case remanded to the District Court with directions to proceed in accordance with the views expressed in this opinion.

CLARK, Circuit Judge (concurring).

With the result herein and the legal principles upon which it is based, I am in accord; I should not think it necessary to add anything but for fear that certain expressions, particularly at the close of the opinion, are possibly susceptible of an interpretation suggesting a more perfunctory hearing below than, I believe, is intended or legally required. Though the issue is one as to the exercise of discretion in granting or denying bail by or on behalf of the Attorney General, that, after all, is a legal issue, reviewable in the courts, and not a mere matter of the bona fides or indeed of the sincerity of belief of the official involved. Matters involving opinions and personal convictions are prone to bring forth more sharp, if not arbitrary, action than are matters about which we feel less deeply; and, as experience shows, it has been easy in the past at times to forget that our country has grown strong in part

because of the tolerance of views it permits and that the danger required in historic phrase by the Supreme Court to justify suppression of beliefs must be at once "clear" and "present."[1] Hence here the question is not so much the state of mind of the officials involved as it is whether they can justifiably feel that there is a good probability of the ultimate sustaining of the charges and that meanwhile the public good justifies confinement of these relators notwithstanding the obviously protracted nature of the proceedings before the Supreme Court will have passed upon the issues.

While it is true that the case is not to be finally tried in the district court, either on this hearing or on a later one, yet we cannot shut our eyes to the fact that all previous proceedings based on charges of this nature have failed in the Supreme Court.[2] Hence it would seem that to justify such confinement here there must be better evidence than has been presented in the past and that some at least should be disclosed to the district court to avoid the charge of arbitrary decision. Upon the allegations here these relators appear to have rather long and deep roots in this country; there even seems question as to where they could be sent, should they be found deportable. But, passing that, it would seem that they should not be wrested from their positions of substantial leadership in the labor movement or the like and held in confinement for several years if their cases are to be no more successfully prosecuted than were the others cited. Several of these relators now appear to be at large upon substantial, though not unusual, bail upon criminal charges. If such bail is adequate there, it does seem an anomaly to require absolute imprisonment upon noncriminal charges. Moreover, if the charges involve substantially the same issues as here, the result of an open and adversary trial before judge and jury would seem a better ground upon which to base eventual deportation than that of an administrative hearing. If so, long-continued confinement administratively would seem yet more of an anomaly.

---

[1] Schenck v. United States, 249 U.S. 47, 52, 39 S.Ct. 247, 63 L.Ed. 470; Bridges v. California, 314 U.S. 252, 263, 62 S.Ct. 190, 86 L.Ed. 192, 159 A.L.R. 1346. "But the First Amendment represents this nation's belief that the spread of political ideas must not be suppressed." Black, J., in Ludecke v. Watkins, 335 U.S. 160, 181, 68 S.Ct. 1429, 1439. See also O'Brian, Loyalty Tests and Guilt by Association, 61 Harv.L.Rev. 592;

Chafee, Free Speech in the United States, 1941, c. 5; The Enforcement of the Deportation Laws, 2 Rep. National Commission on Law Observance and Enforcement, 1931, 5-8, 135-137.

[2] Schneiderman v. United States, 320 U.S. 118, 63 S.Ct. 1333, 87 L.Ed. 1796; Bridges v. Wixon, 326 U.S. 135, 65 S.Ct. 1443, 89 L.Ed. 2103; Kessler v. Strecker, 307 U.S. 22, 59 S.Ct. 694, 83 L.Ed. 1082.