**WARHOL v. SHRODE et al.**

Civ. No. 3517.

United States District Court.
D. Minnesota, Fourth Division.

Oct. 30, 1950.

On amended Application for Writ of Habeas Corpus Nov. 4, 1950.

See also 84 F.Supp. 543.

Douglas Hall, of Minneapolis, Minn., for petitioner.

Howard H. Gelb, Asst. U. S. Atty., of St. Paul, Minn., for respondents.

NORDBYE, Chief Judge.

The petition sets forth that Peter John Warhol is in the custody of the respondents, having been arrested on October 22, 1950, on a warrant dated September 2, 1947,

charging him with being in the United States as an alien in violation of the immigration laws and subject to deportation as a member of, and affiliated with, an organization that advocates the overthrow by force and violence of the Government of the United States. The petitioner sets forth that this warrant was first served on him on or about September 2, 1947, at which time he was released on a $1,000 bond and that this bond has never been cancelled or revoked; that subsequent to September 2, 1947, after a hearing on May 23, 1949, the Board of Immigration Appeals of the United States upheld an order for deportation directed against the petitioner, but because none of the proceedings were conducted in accordance with the provisions of the Administrative Procedure Act of June 11, 1946, 5 U.S.C.A. § 1001 et seq., all of the proceedings became null and void, Wong Yeng Sung v. McGrath, 339 U.S. 33, 70 S.Ct. 445. The petition then sets forth that the petitioner was taken into custody on October 22, 1950, under the Internal Security Act of 1950, Section 23(a), 8 U.S.C.A. § 156(a), which provides, in part, " * * * Pending final determination of the deportability of any alien taken into custody under warrant of the Attorney General, such alien may, in the discretion of the Attorney General (1) be continued in custody; or (2) be released under bond in the amount of not less than $500, with security approved by the Attorney General; or (3) be released on conditional parole."

Petitioner alleges that this statute does not authorize the re-arrest of an alien against whom deportation proceedings are pending and who is at liberty on bond approved by the Attorney General. It is also urged that these provisions of Section 23 (a) are unconstitutional, in violation of the Fifth and Eighth Amendments to the Constitution of the United States, because they purport to vest unlimited discretion in the Attorney General to imprison indefinitely without bail any alien against whom a deportation proceeding may be pending.

The portion of Section 23(a) above quoted amends Section 156 of 8 U.S.C.A., and the significant change in the portion re-ferred to is that, by reason of the language used, Congress unequivocally has vested discretion in the Attorney General to take an alien into custody on a deportation warrant and continue such alien in custody, release him on bond of not less than $500, or release him on conditional parole. The weight of authority clearly holds that such discretion was vested in the Attorney General under the provisions of the Act before the 1950 amendment. United States v. District Director of Immigration, 2 Cir., 120 F.2d 762. But the language now employed in the 1950 Act removes any doubt as to the intention of Congress in this regard. However, while recognizing that he does not have an absolute right to bail, the petitioner contends that, having once been released on bail, the Attorney General cannot re-arrest him and hold him without bail in the absence of an affirmative showing by the authorities that such action was within the Attorney General's sound discretion. But I am convinced that petitioner's position in this regard is not sound. Manifestly, the Attorney General is not committed irrevocably to the continuance of bail merely because, in the exercise of his discretion, he has permitted the alien to be at liberty on bond. Many changes in conditions may have arisen since the alien was released on bond. And the Attorney General may have concluded that he was in error in permitting bail in the first instance. If it is recognized that the Attorney General is vested with the discretion to continue the alien in custody or release him on bail, then it must follow that such discretion necessarily encompasses the right not only to release the alien on bail after the Attorney General may have first determined that the alien should be kept in custody, but also the right to re-arrest him and continue him in custody after he had once been released on bail. That petitioner's contention that the respondents should have the burden of affirmatively showing that the Attorney General exercised sound discretion in determining that the alien should be kept in custody after once having been released on bail is not tenable is apparent from the very purposes of the statute. Deportation proceedings are civil, not criminal. Congress has deter-

mined that those charged with the enforcement of our deportation laws should be vested with the discretion of determining whether in any particular case the alien should be at large on bail during the pendency of the deportation proceedings. While such authority does not grant an absolute power without review in case of abuse, the Court cannot override the discretion of the Attorney General in regard to bail except where "the alien makes a clear and convincing showing that the decision against him was without a reasonable foundation. In the absence of such proof, the administrative determination is final." United States v. District Director of Immigration and Naturalization, 2 Cir., 169 F.2d 747, 751-752. It must follow, therefore, that the discretion of the Attorney General regarding the necessity of placing this petitioner in custody is final in absence of proof of an abuse of discretion. And, moreover, the burden of establishing such abuse necessarily rests upon the alien. United States v. District Director of Immigration and Naturalization, 2 Cir., 169 F.2d 747.

The issues presented on the petition and respondents' return do not present the issue of an abuse of discretion on the part of the Attorney General in taking the petitioner into custody after once having released him on bail. However, petitioner indicated at the hearing that he desires to amend his petition and set forth that charge if the Court determines that the Attorney General is authorized under the Act to take the alien into custody after he has been released on bail and if the burden does not rest upon the respondents to establish affirmatively that such action was justified in the exercise of sound discretion. The United States Attorney has indicated that he does not object to an amendment of the petition setting forth petitioner's position in this regard.

In view of the premises, it must follow that petitioner's prayer for an order declaring that his imprisonment, restraint, and detention is illegal and void, and granting him an immediate release from custody, must be, and the same hereby is, in all things denied, without prejudice, however, to the right of the petitioner to amend his petition to set forth allegations charging the Attorney General with abuse of discretion in taking him into custody and detaining him without bail. Such amendment may be made on or before 5 days after the date of this order and the respondents are granted 5 days after being served with the amended petition to file their return thereto. After issues have been framed, counsel may arrange with the Court for an early hearing thereon.

An exception is reserved to the petitioner.
On Amended Application for Writ
of Habeas Corpus.

The Court in its order of October 30, 1950, determined that petitioner was not entitled to an order declaring his present imprisonment and restraint illegal and void merely because, when arrested on a deportation warrant in September, 1947, he was released on a $1,000 bond and when he was re-arrested on the same warrant on October 22, 1950, he is held by the Attorney General without bail. While recognizing that the discretion vested in the Attorney General in deportation cases to continue an alien in custody or release him on bail is not absolute, I stated that "the Court cannot override the discretion of the Attorney General in regard to bail except where 'the alien makes a clear and convincing showing that the decision against him was without a reasonable foundation.' " United States v. District Director of Immigration and Naturalization, 2 Cir., 169 F.2d 747, 751-752.

After the order was filed, the alien filed an amended petition in which he charges that his detention and the refusal to release him on bail was a gross abuse of discretion on the part of the respondents and was arbitrary and unlawful. On November 2, 1950, the Court heard evidence on behalf of the petitioner in support of the petition. No evidence was offered in behalf of the respondents.

The evidence adduced indicates that petitioner came to this country from Austria-Hungary, and from a portion thereof which is now Czechoslovakia, in 1913. He was then two years of age. He has resided in the United States ever since his entry. He is married and has three children, ages twelve, six, and two and one-half. It ap-

pears that he has filed an application for American citizenship, but the hearing on the application has been delayed by reason of the pendency of the deportation proceedings. In 1944, he entered the armed services of the United States and served in the United States Army overseas. He was honorably discharged on January 4, 1946. On September 2, 1947, he was arrested on a deportation warrant charging him with being in the United States as an alien in violation of the immigration laws and subject to deportation as a member of, and affiliated with, an organization that advocates the overthrow of the Government of the United States by force and violence. The petitioner admits that he was a member of the Communist Party from 1935 to 1938, and frankly admits that he resigned his membership for fear that his affiliation might cause his deportation. In 1940 Congress passed an Act amending the Act of October 16, 1918, making aliens amenable to deportation if they had been members of any proscribed organization at any time after their entry into the United States. After petitioner's arrest on the deportation warrant of September 2, 1947, hearings were had in March, 1948, and on April 13, 1948, the presiding inspector sustained the charges. On January 7, 1949, a warrant of deportation was issued; on May 23, 1949, the Board of Immigration Appeals upheld the order, but because none of the proceedings were conducted in accordance with the provisions of the Administrative Procedure Act of June 11, 1946, 5 U.S.C.A. § 1001 et seq., the proceedings were held to be null and void. Wong Yang Sung v. McGrath, 339 U.S. 33, 70 S.Ct. 445. It follows, therefore, that the hearings on the deportation warrant will be de novo. The showing indicates that the first hearing herein is scheduled for the latter part of November, 1950.

The evidence discloses that Warhol has been regularly employed in Minneapolis since his arrest in 1947, and in June, 1950, he purchased a home in Minneapolis, where he now resides with his family. The home is heavily encumbered and the payments on the principal and interest are some $42.00 per month. There is no evidence that Warhol has been affiliated with the Communist Party since 1938, though he frankly admitted on the stand that he still adheres to the principles advocated by the Communist Party, except that he would seek to bring about a socialistic Government by peaceful means as long as the United States is a democratic Government. If, however, it should become a so-called Fascist Government, which denies to the people the right of the ballot and the right freely to petition the Government for redress of grievances, then he stated that he would espouse revolutionary methods to overthrow such a regime by force. He stated that if war were to break out between Russia and the United States at the present time, he would fight willingly for the United States against Russia wherever the field of conflict might be. However, he assumes to determine and to reserve his course of conduct in case of war if this country has been relegated into what he considers to be a Fascist state.

There is an absence of any showing by the Attorney General as to what may have motivated him in ordering the re-arrest of petitioner and to have him detained without bail. The officer in charge of the Immigration and Naturalization Service in this District stated that he has no knowledge of any complaints as to Warhol's conduct between September 2, 1947, and the date of his re-arrest on October 22nd, and he further stated that no reports have come to him as to any question concerning Warhol's availability for future hearings in the pending proceedings in deportation.

■ The respondents emphasize, however, that the Internal Security Act of 1950 sets forth the apprehension and views of Congress as to the numerous aliens "who have been found to be deportable, many of whom are in the subversive, criminal, or immoral classes who are free to roam the country at will without supervision or control." Section 2(13), 50 U.S.C.A. § 781 (13). Moreover, in the Act Congress stated that the Communist organization in the United States presents "a clear and present danger to the security of the United States and to the existence of free American institutions". Section 2(15). How-

ever, there is no mandate in the Act to the Attorney General that every alien who at some time belonged to a proscribed organization and against whom deportation proceedings are pending should be taken into custody and held without bail. It is common knowledge that deportation proceedings may consume many, many months before they are determined. And notwithstanding the result of the prior proceedings against this petitioner, he is entitled to pursue his defense to the present deportation proceeding as is guaranteed to him by our laws. The Court is informed that petitioner takes the view that the application of the 1940 amendment to the 1918 Act to him is unconstitutional because he left the Communist Party in 1938. Before this alleged constitutional question is finally determined, a long delay may ensue. Consequently, if the Attorney General's order is to be sustained, the petitioner must languish in jail while attempting to protect his rights in the pending deportation proceedings.

Obviously, as to the right of bail, every deportation case should be determined on its own merits. The former statute, Section 156, Title 8, U.S.C.A., which was amended by the Internal Security Act of 1950, likewise vested the Attorney General with discretion as to the allowance of bail in deportation cases. The 1950 amendment merely employs language which tends to make more clear such discretion. The question of the Attorney General's discretion regarding bail was considered by the Second Circuit in United States v. District Director of Immigration and Naturalization, 169 F.2d 747, and in declaring that the Attorney General's discretion was not absolute, the court indicated that the following factors, among others, should be considered in determining whether such discretion was reasonably exercised: (a) probability of the alien being found deportable; (b) seriousness of the charge against him; (c) the danger to the public safety of his presence within the community; and (d) the alien's availability for subsequent proceedings if enlarged on bail. This Court does not venture any opinion as to the probability of this alien being ultimately deported. But it may be noted that the charge

against him is limited to a membership in a proscribed organization some 12 years ago. Undoubtedly, the growing menace of Communism throughout this country is real and presents a present danger to our free institutions. But the Court must not permit expediency to be substituted for judicial process. As Justice Jackson, sitting as Circuit Justice of the Second Circuit, stated in Williamson, et al. v. United States, 184 F.2d 280, at page 283, in allowing bail to the Communist leaders who were recently convicted in New York, "My task would be simple if a judge were free to order persons imprisoned because he thinks their opinions are obnoxious, their motives evil and that free society would be bettered by their absence."

This alien, however, is no convicted Communist, nor has it been established that he is guilty of any subversive activities in this country. The right of the Government to deport him is as yet undetermined. He has no criminal record. He has resided in the United States practically all of his life. His work record seems excellent. That he will be available for all hearings in the deportation proceedings and for the execution of any final order of deportation seems entirely probable. While his political beliefs and philosophy, and particularly his former membership in the Communist Party, are wholly repugnant to this Court, it is difficult to reconcile one's sense of American justice, even to an alien who professes certain Communistic principles, to an incarceration over a period of many months when he is accorded the right under our laws to have counsel and defend himself against the charges which have been lodged against him. The Court is not unmindful of the danger to this country, particularly in these troublous times, of subversive aliens who are carrying on activities to undermine and destroy American institutions through Communist organizations and so-called "front" organizations which have pledged their allegiance to a foreign country dedicated to the destruction of all democratic institutions. But, weighing the probabilities in the instant case of any potential danger to the safety and welfare of this country and its institutions if Warhol is en-

234

larged on bail, as against the probable injustice to Warhol, who may be required to spend many months in jail if he is denied bail when he is under no criminal charge and under no valid order of deportation, the Court cannot escape the conclusion that there has been an abuse of discretion and a subversion of judicial process in summarily re-arresting him and holding him without bail. The situation is not unlike that which was before the court in United States ex rel. Pirinsky v. Shaughnessy, 2 Cir., 177 F.2d 708, where that court considered habeas corpus proceedings on relation of an alien who was being held on bail of $25,-000 in deportation proceedings. In that case it appeared that the petitioner had worked in this country for over 25 years, was married to an American citizen, and was living with his wife and minor child. In reducing the bail to $5,000, the court made this observation, 177 F.2d at page 709, " * * * But the long administrative record, in evidence below, fails to show any immediate or particular danger to be expected from this individual, beyond other members of the Communist Party; and the administrative findings, filed since this proceeding was commenced, set forth no other ground than such party membership for his deportation."

There is no evidence whatsoever in this administrative record, or even contention on the part of the respondents, that Warhol is now, or has been, pursuing any course of conduct since 1938 which is dangerous or inimical to the public welfare and safety of the United States. If it appears hereafter during the pendency of these proceedings that Warhol is engaged in any conduct which changes the situation made to appear at this hearing, then, of course, the Attorney General has the discretion to place him in custody again. But, in view of the showing made, the Court must conclude that the petitioner has sustained the burden of proof in establishing by reasonably clear and convincing testimony that the Attorney General in holding this petitioner in custody without bail has abused his discretion. It is the Court's view that bail in the sum of $2,500 is reasonable, and if pe-

titioner presents to the District Director of Immigration and Naturalization a good and sufficient bail or bond to be approved by said Director in the penal sum of $2,500 conditioned in the usual manner, the petitioner should be released on such bail or bond. An order in harmony herewith may be presented. An exception is reserved.