## UNITED STATES ex rel. DZURO v. DISTRICT DIRECTOR OF IMMIGRATION AND NATURALIZATION AT PORT OF NEW YORK.

United States District Court
S. D. New York.
Feb. 24, 1951.

Carol King and Blanch Freedman, New York City, for relator.

Irving Saypol, New York City, by William J. Sexton and Lester Friedman, New York City, for respondent.

BONDY, District Judge.

This is a habeas corpus proceeding brought for the release of the relator, Michael Dzuro, from the custody of the District Director of Immigration and Naturalization at the Port of New York.

An order of deportation has been entered against Dzuro. Its validity is not contested. The relator's contention is that the Attorney General's refusal to enlarge him upon bond until he can actually be deported is arbitrary and constitutes an abuse of discretion. This raises the question whether the Attorney General's exercise of discretion after an order of deportation has been entered may be judicially reviewed.

Before its amendment by the Internal Security (McCarran) Act, Section 20 of the Immigration Act of February 5, 1917, Section 156 of Title 8 of the United States Code provided that "pending the final disposal of the case of any alien so taken into custody (i. e., in connection with deportation proceedings commenced against him pursuant to Section 155), he may be released under a bond * * * conditioned that such alien shall be produced when required for a hearing or hearings * * * and for deportation if he shall be found to be unlawfully within the United States."

This provision, governing the period when proceedings are pending and an order of deportation has not yet been entered, was not uniformly construed. In the Sixth Circuit, it was held that the release of the alien on bond was mandatory, because the provision did not contain the phrase, "in the discretion of the Attorney General," which Congress commonly employed when it desired to grant him discretion. In the above provision, "may " was thus construed

as "must". Prentis v. Manoogian, 6 Cir., 1926, 16 F.2d 422.

In this Circuit, however, the provision was construed to give the Attorney General discretion either to detain the alien or to release him under bond. U. S. ex rel. Zapp v. District Director, 2 Cir., 1941, 120 F.2d 762. This discretion was held not to be absolute, but one to be reasonably exercised upon a consideration of relevant facts; and the courts accordingly could review its exercise when it was alleged that it had been abused. U. S. ex rel. Potash v. District Director, 2 Cir., 1948, 169 F.2d 747.

Section 23 of the Internal Security (McCarran) Act of 1950, Pub.L. No. 831, 81st Cong., 2d Sess., Sept. 22, 1950, changed the former provision of Section 156 to read: "* * * Pending final determination of the deportability of any alien taken into custody under warrant of the Attorney General, such alien may, in the discretion of the Attorney General (1) be continued in custody; or (2) be released under bond * * *; or (3) be released on conditional parole. It shall be among the conditions of any such bond, or of the terms of release on parole, that the alien shall be produced, or will produce himself, when required to do so * * *, and for deportation if an order for his deportation has been made. * * *"

The power given to the Attorney General was thus enlarged by the addition of a provision permitting release on conditional parole. There also was added the phrase, "in the discretion of the Attorney General", upon the absence of which from the former Section 156 the Manoogian decision had been based.

It appears that after enactment of the McCarran Bill, the Attorney General, acting on the theory that the amended Section 156 now gave him an absolute and unreviewable discretion, caused to be returned to custody 48 aliens against whom deportation proceedings were pending, and who until that time had been at large under bond. That contention was emphatically rejected by the courts. All the reported decisions held that the addition of the express provision for discretion was intended to do no more than to confirm the interpretation of the Court of Appeals for the Second Circuit that the Attorney General has discretion to detain or to release, and to reject the construction of the Manoogian decision. All the courts held that the amendment had not changed the Potash rule, and that the exercise of this discretion can now as before be judicially reviewed. Carlson v. Landon, 9 Cir., 186 F.2d 183 and the companion decisions Stevenson v. Landon (Hyun v. Landon and Carlisle v. Landon), 9 Cir., 186 F.2d 190, reversing on other grounds Ex parte Carlson, D.C.S.D.Cal. 1950, 94 F.Supp. 18; United States ex rel. Klig v. Shaughnessy, D.C.S.D.N.Y.1950, 94 F.Supp. 157 (in which Judge Ryan released 16 relators); United States ex rel. McQuillan v. Delaney, D.C.E.D.La.1950, 94 F. Supp. 184; Podolski v. Baird, D.C.E.D. Mich.1950, 94 F.Supp. 294; Zydok v. Butterfield, D.C.E.D.Mich.1950, 94 F.Supp. 338; Warhol v. Shrode, D.C.Minn.1950, 94 F.Supp. 229; Ex parte Sentner, D.C.E.D. Mo.1950, 94 F.Supp. 77.

In the law governing the disposition of an alien after an order of deportation has been made against him, the Internal Security Act made more far-reaching changes.

Formerly the Immigration Law, 8 U.S.C. A. §§ 100–246, did not contain any provision for the release of an alien upon parole or bond after an order of deportation had been made, and the alien usually remained in custody between the time of entry of order and his actual deportation. However, the courts reviewed the duration of such detention for its reasonableness, and generally held detention exceeding four to six months to constitute an unreasonable and thus unlawful restraint. See, e. g., United States ex rel. Ross v. Wallis, 2 Cir., 1922, 279 Fed. 401. Furthermore, the former Section 156 was construed as not authorizing the imposition of conditions or the exaction of bond when an alien who could not be deported within a reasonable time was enlarged. Petition of Brooks, D.C. Mass.1925, 5 F.2d 238.

The present Section 156 substituted by the McCarran Act for the former section now provides: "* * * When such an order of deportation has been made against any alien, the Attorney General shall have

a period of six months from the date of such order within which to effect the alien's departure from the United States, during which period, at the Attorney General's discretion, the alien may be detained, released on conditional parole, or upon bond in an amount and specifying such conditions for surrender of the alien to the Immigration and Naturalization Service as may be determined by the Attorney General. * * *"

Thus the same alternatives given to the Attorney General during the pendency of deportation proceedings have also been granted to him after an order of deportation has been made: he may detain the alien, release him on conditional parole, or under bond.

The petitioner's contention is solely that the Attorney General's determination to detain him, rather than to release him under bond, was arbitrary and an abuse of discretion. There is not any contention that Dzuro has been held an unreasonable time. The question whether an alien against whom an order has been made and who has been detained for six months or less can still, in view of the newly-added six-months provision, attack his detention as being unreasonably long is thus not presented, for Dzuro maintains, not that he has been detained too long, but that he should have been released under bond at once, rather than being detained.

This contention presents the question whether the Attorney General's exercise of discretion as to releasing or detaining an alien after an order has been entered is judicially reviewable.

The legislative history of the Internal Security Act sheds no light on the Congressional intent on this point. Conference Report No. 3112, 81st Cong., 2d Sess. (1950); U.S. Code Cong.Serv. (1950), No. 10, 4160 at 4186.

The language which Congress adopted to govern the discretion of the Attorney General during the pendency of proceedings and the language employed to govern his discretion after an order has been made are substantially the same. Thus the persuasive reasoning of the cases cited above, involving aliens against whom proceedings were pending, that this language was not intended by Congress to abolish judicial review, becomes equally applicable to the language regulating the Attorney General's discretion after an order has been entered. Moreover, the Act reveals a thorough knowledge of the prior judicial construction of the former Section 156; thus, for example, Congress was careful to abolish the rule of Petition of Brooks that enlargement after entry of order must be unconditional. It seems incredible that Congress, had it intended to abolish judicial review, should have used the language which it in fact chose.

■ While expressing no opinion as to whether the length of detention, if six months or less, is still reviewable, the court accordingly concludes that it has the power to review the Attorney General's exercise of discretion in so far as his choice between detention and release is concerned.

Dzuro was born in a place now within the borders of Czechoslovakia. His parents at times resided in the United States, and three of their children were born here. One of these, relator's brother John, presently lives in Pennsylvania.

Dzuro went to Canada in 1935, and from there entered the United States in 1937 without possessing an Immigration visa. Although he was here illegally, he duly registered under the Alien Registration and the Selective Service Acts. 8 U.S.C.A. § 451. et seq.; 50 U.S.C.A.Appendix, § 301 et seq. In 1942, deportation proceedings were begun by issuance of a warrant of arrest. Dzuro was released on his own recognizance to enable him to obtain bond in the sum of $500, at that time the minimum sum permitted. Hearings were held in 1945, 1946 and 1947, a finding of deportability was made thereon, and affirmed upon appeal by the Commissioner of Immigration and Naturalization and then by the Board of Immigration Appeals. An order of deportation was made on January 14, 1949.

The order could not then be executed because petitioner was confined by the State

of New York under a sentence of from two to four years on a conviction of forgery and larceny. The transaction underlying this conviction appears to have been the petitioner's presentation for payment of illegally altered and invalid horse racing tickets. The total amount involved was $303, of which only $132 actually passed into his possession. Previously, petitioner had once been convicted of vagrancy, and sentenced to a workhouse for thirty days.

During his parole under the forgery and larceny charges, petitioner violated his parole, allegedly by being in a poolroom after midnight, and was reimprisoned as a parole violator. Upon his final release on November 17, 1950, he was taken into custody by the respondent. It is alleged, and denied, that while still in state prison, Dzuro refused to make application for a Czechoslovakian passport. Later at Ellis Island he did execute such application, allegedly in reliance upon the assurance of Immigration Service officials that he would be released under bond as soon as he did so. In the meantime, the petitioner had designated Canada as the country to which he wished to be deported, as is his right under the amended Section 156. Upon the argument of this writ, the response of the Canadian authorities of December 18, 1950, refusing to accept Dzuro, was apparently not yet in the hands of counsel for the Government. As a result of this refusal, it now appears that if Czechoslovakia accepts him, he will ultimately be deported there.

The petitioner lays great stress on the fact that when he was originally taken into custody at the commencement of deportation proceedings in 1942, he was at once released, first on his own recognizance and then under bond, and that he has always appeared when required to do so by the Immigration Service.

This consideration, the fact that his brother resides in the United States, the probability that bail would suffice to insure his presence, and the desire to permit him to wind up his affairs here before being deported might perhaps have led this court to a choice differing from the Attorney General's. But the court is not free to consider the question de novo. As was said by the Court of Appeals for this Circuit in the Potash case [169 F.2d 751]: "* * * However, in any consideration of his denial of bail it should always be borne in mind that the court's opinion as to whether the alien should be admitted to bail can only override that of the Attorney General where the alien makes a clear and convincing showing that the decision against him was without a reasonable foundation. In the absence of such proof, the administrative determination is final. If the Eighth Amendment to the Constitution is considered to have any bearing upon the right to bail in deportation proceedings, and this has been denied, it is our opinion that the provisions of that Amendment and any requirement of the due process provisions of the Fifth Amendment will be fully satisfied if the standards of fairness and reasonableness we have set forth regarding the exercise of discretion by the Attorney General are observed."

But when the Attorney General decided, in November, 1950, to detain Dzuro, there were factors in the case which had not been present in 1942, when Dzuro was released on bond, for he had in the meantime been convicted twice, and had violated his parole. Under those circumstances, it cannot be said that the relator has made "a clear and convincing showing that the decision against him was without a reasonable foundation", and the court is accordingly constrained to dismiss the writ.

Writ of habeas corpus dismissed.