**UNITED STATES ex rel. YOUNG v. SHAUGHNESSY, District Director of Immigration and Naturalization Service.**

No. 166.   Docket 22259.

United States Court of Appeals
Second Circuit.

Argued Jan. 18, 1952.

Decided Feb. 13, 1952.

Isidore Englander, New York City, for relator-appellant.

Myles J. Lane, U. S. Atty., New York City, William J. Sexton, Asst. U. S. Atty., Louis Steinberg, District Counsel, United States Department of Justice, Immigration and Naturalization Service, and Lester Friedman, Attorney, United States Department of Justice, Immigration and Naturalization Service, all of New York City, for respondent-appellee.

Before AUGUSTUS N. HAND and CLARK, Circuit Judges, and BRENNAN, District Judge.

AUGUSTUS N. HAND, Circuit Judge.

Martin Young was taken into custody on October 26, 1951, pursuant to a warrant for his arrest dated October 18, 1951, which charged that he was deportable in that he had illegally entered the United States without a valid immigration visa and was a member of the Communist party of the United States at the time of his entry. The warrant of arrest made no provision for his release on bail pending deportation proceedings, wherefore he filed a petition in the district court for a writ of habeas corpus, alleging that his detention was illegal. The writ was granted on October 31, 1951. The respondent filed a return, and the relator a traverse to the return, both of which were dated November 7, 1951. On November 21, 1951, the district court ordered the writ dismissed after having heard oral argument. Thereafter, the relator moved for a reargument on the petition and asked leave to amend the traverse. This motion was denied.

■■ For the purpose of this appeal we may assume without deciding that the action of the Attorney General in refusing to release Young on bail pending the outcome of the deportation proceedings would be reviewable and subject to reversal in case of an abuse of discretion even after the passage of the Internal Security Act of 1950, 50 U.S.C. § 781 et seq. United States ex rel. De Geronimi v. Shaughnessy, 2 Cir., 187 F.2d 896. In his petition for the writ, Young alleged facts indicating that if released he would be available for any further proceedings at which his presence would be required. The return to the writ, however, contained allegations which, if accepted, established a reasonable foundation for the denial of bail by the Attorney General. Thus the return, in addition to containing allegations of membership in the Communist party, alleged that Young had once before escaped from custody during earlier proceedings; that he had previously attempted to enter the United States by furnishing a false identity and

with a fraudulent passport; and that during his present detention he refused to answer questions relating to prior identification, places of residence, employment and home life. Section 2248 of the Judicial Code, 28 U.S.C. § 2248, requires that the facts alleged in the return be taken as true unless impeached, and Young in his traverse to the return did not refute those statements, nor did he in his motion for reargument, make any offer to prove the contrary, nor did he assert new facts, which under 28 U.S.C. § 2246 could have been accomplished by affidavit. As the Supreme Court has recently said in Stack v. Boyle, 342 U.S. 1, 4, 72 S.Ct. 1, 3: "The right to release before trial is conditioned upon the accused's giving adequate assurance that he will stand trial and submit to sentence if found guilty." While we held in United State ex rel. Potash v. District Director of Immigration and Naturalization, 2d Cir., 169 F.2d 747, that the action of the Attorney General was under the then existing law judicially reviewable, we nevertheless carefully said: "However, in any consideration of his denial of bail it should always be borne in mind that the court's opinion as to whether the alien should be admitted to bail can only override that of the Attorney General where the alien makes a clear and convincing showing that the decision against him was without reasonable foundation." 169 F.2d at page 751.

In the light of the allegations of the return, which we must accept as true, we cannot say that the relator made such a showing here. Accordingly the orders are affirmed.

CLARK, Circuit Judge (dissenting).

Stack v. Boyle, 342 U.S. 1, 4, 72 S.Ct. 1, as quoted in the opinion, establishes that the function of bail to an accused is to furnish adequate assurance of his presence at trial and for service of sentence if found guilty. "Bail set at a figure higher than an amount reasonably calculated to fulfill this purpose is 'excessive' under the Eighth Amendment." Id., 342 U.S. at page 5, 72 S.Ct. at page 3. This is the import of F.R.Cr.P., Rule 46(c), 18 U.S.C., providing that the amount shall be such as "will insure the presence of the defendant." Other purposes, such as punishment or security to society, are not to be subserved through the medium of refusing bail. So Justice Jackson has stated that, notwithstanding the evil character of convicted defendants, "it is still difficult to reconcile with traditional American law the jailing of persons by the the courts because of anticipated but as yet uncommitted crimes. Imprisonment to protect society from predicted but unconsummated offenses is so unprecedented in this country and so fraught with danger of excesses and injustice that I am loath to resort to it, even as a discretionary judicial technique to supplement conviction of such offenses as those of which defendants stand convicted." Williamson v. United States, 2 Cir., 184 F.2d 280, 282, 283. If such is the law binding upon courts even after conviction had, I think no harsher rule may be applied by administrative officials in proceedings not criminal in nature.

The return here submitted on behalf of the District Director of Immigration and Naturalization, purporting to state the grounds of decision of the Attorney General acting "through his subordinate officers," does not appear (or at least not clearly) to be based on these principles. It sets forth in very general and conclusory form several allegations of serious, if not criminal, acts and associations by the accused and his potential danger to public security and concludes that "the administrative decision to continue the relator in custody is based upon a reasonable foundation since the relator's presence at large is deemed prejudicial to the interests of the United States *for security reasons,* his restraint being deemed necessary *not only as a measure of public safety* but because it is believed that he would abscond if his presence in the United States in an underground capacity were ordered by the Communist Party." (Italics added.) Naturally the matters alleged in the return (as summarized in the opinion) are material to the likelihood of relator's disappearing, but they are more evidential than ultimate in nature and must take their place with other, possibly more immediate, evidence

of a permanent and known location for relator. Their direct bearing beyond the bare and broad conclusions asserted would seem to require some development; thus the allegation of escape seems to point to a recent jail-breaking from close custody, while respondent's brief carries the incident back to 1934 and makes it a failure of an order that he be "detained" on board the vessel on which he had arrived. On the other hand relator, relying upon the purpose of bail to assure his appearance, alleges, as pertinent thereto, that he has at all times shown his availability beginning with his appearance at the Immigration Office when requested by letter as early as March 23, 1949, that in January, 1951, he notified the Immigration Service of his address in accordance with the recently enacted Internal Security Act, and that on learning that the agents were looking for him he made arrangements through his attorney for his voluntary appearance at their office for service of the warrant of arrest. He also asserts that he has been married to an American citizen for twenty-five years, that they have two American-born minor children, that he has resided in New York City for the past ten years and at the same address for the past six years, and that he has been employed as a salesman.

While the respective allegations do not meet head on, they seem to me to present issues of fact to be ascertained in the normal way by hearing. And the statute, doing away with the old rule making a return final, contemplates just that, while giving considerable leeway as to the character of the evidence to be received. 28 U.S.C. §§ 2246–2248. See also Stewart v. Overholser, D.C. Cir., 186 F.2d 339, 342: "When a factual issue is at the core of a detention challenged by an application for the writ it ordinarily must be resolved by the hearing process. This is a chief purpose of the habeas corpus procedure." That court also held no traverse necessary "when a factual issue has been clearly framed by the petition and the return or answer." Here it is true that the ultimate question is whether or not the Attorney General's subordinates were pursuing an erroneous legal theory; but a hearing seems necessary to ascertain the background of facts. It becomes the more necessary, too, on the allegation in relator's brief, made with some basis of factual support, that only a handful of deportees have been so confined and that relator is the only one at present locked up. If there are special circumstances requiring such unique treatment, these, it seems, should be brought out.

The above seems to me the required legal course. I add that beyond this there are more profound questions involving American traditions of fair play and judicial hearing and the example we would give to other nations while dealing with their nationals. I am of course accepting what is assumed arguendo in the opinion that claims for the Attorney General of new and absolute powers not specifically granted in the recent legislation are not well founded and that court review may be had for errors of law or abuse of discretion by the administrative officials in denial of bail. United States ex rel. Potash v. District Director, 2 Cir., 169 F.2d 747; United States ex rel. Pirinsky v. Shaughnessy, 2 Cir., 177 F.2d 708. But our continued acceptance of bare allegations as to the evil character of a deportee and his Communist ties is surely going to freeze into law the very inviolability of the Attorney General's power that we are assuming not to be so. The net result is that a person, through this civil process, but without any court review, can be placed in indefinite incarceration—continuous even beyond a final order of deportation in the light of the known unwillingness of other countries to receive these persons; whereas one accused of a like charge by way of criminal indictment is subject to all the judicial protection set forth in Stack v. Boyle, supra.

Some point is made of the failure of relator's attorney to set forth the evidence he would adduce at the hearing he requests and of the refusal of the accused to submit to examination. The first I have already dealt with; it seems to me the issues were framed as I have indicated and relator could properly ask for a hearing even though under the statutes cited the judge

could largely control the kind of evidence he would receive. But here the judge denied a hearing and hence did not call for any testimony at all. As to the second it is, of course, now settled that a charge of Communism has such criminal implications that the person charged may refuse to incriminate himself. It may well be that eventually a person against whom deportation is sought on this ground must face the dilemma that either he talks and incriminates himself or else he refuses and thus goes far toward making his deportation certain. But I do not believe it just to require him to rush into this dilemma voluntarily in an endeavor preliminarily to persuade a judge to grant him a hearing and to overcome general and as yet unproved allegations by his accuser. Rather he is entitled to wait until the compulsion is so clear that he can be assured of opportunity to secure ultimate judicial review of the legality of the extremity thus placed before him.

Under all these circumstances I think the interests of justice require a judicial inquiry into the circumstances of denial of bail to the relator. I would remand for this purpose.