**UNITED STATES ex rel. DANIMAN
v. ESPERDY.**

United States District Court,
S. D. New York.

June 24, 1953.

Shapiro, Rabinowitz & Boudin, New York City, for relator, Victor Rabinowitz, New York City, of counsel.

J. Edward Lumbard, Jr., U. S. Atty., New York City, for respondent, William J. Sexton, Asst. U. S. Atty., and Lester Friedman, Atty., Office of the District Counsel, Immigration and Naturalization Service, United States Department of Justice, New York City, of counsel.

WEINFELD, District Judge.

The relator brings this habeas corpus proceeding to review the action of the Attorney General in refusing to enlarge him on bond pending the final determination of deportation charges against him. He was arrested on May 1, 1953, under a warrant charging (1) past membership in the Communist Party of Russia; (2) writing or publishing matter advocating or teaching the national or international doctrines of Communism; (3) writing or publishing written or printed matter advocating or teaching the overthrow of the government of the United States by force and violence or other unconstitutional means;[1] and (4) advocating the overthrow of the United States Government by force and violence, all within the purview of § 241(a) of the Immigration and Nationality Act of 1952, 8 U.S.C.A. § 1251(a). Relator was denied release on bond by representatives of the Immigration and Naturalization Service acting for the Attorney General. He contends that this denial was arbitrary and an abuse of discretion.

The Attorney General's exercise of discretion in denying bail pending deportation proceedings may not be disturbed if the facts upon which he acted reasonably support the inference that, were the alien enlarged on bail, he would "so conduct himself * * * as to aid in carrying out the objectives of the world communist movement," thus constituting a menace to the public interest.[2] Proof of membership and present or recent "personal activity in supporting and extending the Party's philosophy concerning violence" furnishes adequate ground for detention.[3] The burden rests upon the alien to show that the decision against him was without a reasonable foundation.[4]

The relator here asserts that he comes four square within the rationale of the Carlson case in that he has sustained the burden of proof that he discontinued his Communist activities in 1937 and since then has not been a member of, or active in, the Communist Party or any of its affiliates either in this country or abroad nor engaged in any activity detrimental to the security and welfare of the United States. On the contrary, he alleges that since his break with the Party seventeen years ago he has been an apolitical, law-abiding person. Since 1936 relator has pursued the occupation of electrician and for the past three years has been employed in that capacity at the Montefiore Hospital, Bronx, New York. He has resided in New York City for more than twenty years, and for the past fifteen years at one address. He is married to an American citizen who is dependent upon him for support.

A petition substantially setting forth the foregoing facts was filed in support of the writ of habeas corpus on May 15th. Thereafter, but prior to the argument on the writ, the deportation charges were heard before a Special Inquiry Officer,[5] on May 18th and again on May 25th, when they were concluded. The transcript of the proceedings, the findings of fact and conclusions of law were then incorporated as part of the record in the instant proceeding.

In addition to the four charges specified in the warrant of arrest, two additional charges were lodged during the course of the hearings. These were that the relator, who last entered the United States in 1936, (1) was not, at the time of entry, in possession of a valid immigration visa; and (2) that after entry he was a member of the Young Communist League of the United States, an affiliate of the Communist Party of the United States.

---

1. As amended at the deportation hearings.

2. Carlson v. Landon, 342 U.S. 524, 544, 72 S.Ct. 525, 536, 96 L.Ed. 547.

3. Carlson v. Landon, 342 U.S. 524, 541, 72 S.Ct. 525, 535, 96 L.Ed. 547.

4. United States ex rel. Potash v. District Director, 2 Cir., 169 F.2d 747, cited with approval in Carlson v. Landon, 342 U.S. 524, 540–541, 72 S.Ct. 525, 96 L.Ed. 547.

I have discussed the applicable principles of law at greater length in United States ex rel. Kwong Hai Chew v. Shaughnessy, D.C., 113 F.Supp. 49, decided June 5th, 1953, and United States ex rel. Belfrage v. Shaughnessy, D.C., 113 F.Supp. 56, decided June 9th, 1953.

5. The Immigration and Nationality Act of 1952, § 242; 8 U.S.C.A. § 1252(b).

That the relator, up to and including 1936, had been an active and important member of Communist youth groups here and abroad is beyond question. At the hearings, he readily testified to his past activities and to the active role he had played in the American Communist youth movement between 1930 and 1936. In addition, three former Communists testified as to his services.

The Special Inquiry Officer sustained but two of all the charges. He found that relator was deportable on the lodged charge that at the time of entry he was excludable as an immigrant not in possession of a valid visa as required by law. He also sustained the warrant charge of affiliation in that relator had been a member of the Young Communist League of the Ukraine from 1918 to 1936 and was an executive member of the Young Communist International from 1928 until 1936, both of which were affiliated with the Russian Communist Party. Thus, membership in these organizations was placed no later than 1936. The Special Inquiry Officer found that there is "no evidence in this case" to sustain the remaining charges as to membership in the Young Communist League of the United States and advocating or writing matter advocating or teaching either world Communism or the overthrow of the government by force and violence or any other unconstitutional means. Notwithstanding these findings which, to the extent that specific charges were sustained, limited relator's activities and membership in Communist groups to the end of 1936, the government resists his release on bail. It casts the issue in these terms: "whether the relator, as he claims, discontinued his activities in behalf of the world communist movement in 1936 or, whether on the other hand, there is a reasonable basis for the Attorney General's belief that he did not then discontinue his activities and is still active in behalf of the world communist movement."

█ I would agree that if there were evidence from which the inference could reasonably be drawn that relator from 1937 was engaged in any activity on behalf of the world Communist movement, support-

ing and extending its "philosophy concerning violence," the Attorney General's exercise of discretion could not be disturbed. But there is no such evidence. The government alleges in its return that "There is substantial reason to believe that the relator * * * has merely discontinued his open activities in behalf of the Communist Party and has actually continued in his activities in a more guarded and underground capacity in recent years." What the "substantial reason" is is not stated. In fact, not a single "reason" is set forth on the basis of which the Court can determine that the exercise of discretion was based upon facts. It would seem that if there were any facts forming the basis for the "substantial reason" they would have been stated, particularly so because in this case, unlike so many others, no claim is made that the disclosure of such facts would be prejudicial to the public interest. I must assume, therefore, that bail was denied upon the same record that is before me. The deportation proceeding was terminated less than one month ago and it is fair to assume that the government presented all its available evidence to support the original and additional charges; yet it was found that the relator's membership in Communist groups continued only until up to 1937. And the other charges, including membership in the Young Communist League of the United States and proscribed activities failed for lack of proof. Thus, the charge of continuing activity is impliedly negatived by the findings of the Special Inquiry Officer.

Relator upon the hearing ascribed the termination of his Communist activities to various factors. He "had doubts for some time" prior to 1936; during the purge trials in Russia in 1936, "something happened to [him] emotionally"; his opposition to the youth activities of the Communists and his expressed views that there was no need for the Young Communist League in the United States led to his displacement, and he was given the silent treatment by former associates who referred to him as a "Babbitt-Socialist"—whatever that means. As he put it: "after a certain period of time people began shying away from me, and

little by little nobody wanted to greet me any more, so I decided that this is the end. I went away and I am working since then [1936]."

Of the three former Communists who were called as witnesses by the government, one testified that the last time he had any contact with relator as a member of the Communist Party was in 1936; another said that the last time he saw relator at a Communist function was in 1938; the third said that he had heard nothing of relator's disassociation as late as 1942.

The government seeks to draw an inference of continued activity from the statements of these witnesses that usually when an important Communist is disassociated from the Party notice of expulsion and denunciation is published in the Communist press and that, in the case of relator, they knew of no such notice. Two of them, however, themselves left the Party without such publicity; and both of them seemed, according to their testimony, fairly important in Party work. Relator's own explanation of the failure publicly to read him out of the Party is that "they were afraid that I will go to the papers and make open statements and denounce them * * * they were actually waiting until a period of time not to antagonize me, but nobody had any conversations with me and ignored me * * *. They couldn't gain anything by publishing my expulsion."

■ The government next urges that petitioner's claim that he broke with the Party and has been inactive since 1937 must be rejected because of an admittedly false statement as to the date of last entry into the United States made by relator in 1946 in his application for the privilege of voluntary departure and pre-examination. It

urges that since relator lied then, the Attorney General is justified in refusing to give credence to his statement that he has been completely divorced from all Communist activities since 1937. If the sole source of information as to relator's discontinuance of activity rested upon his word, none could question its rejection as the basis for denial of bail. The doctrine falsus in uno falsus in omnibus would be given full effect. But the evidence of termination of activity comes not from the relator alone. The full record in the contested deportation proceeding is before the Court. And it is a record completely devoid of facts as to relator's alleged post-1937 activity. Under this circumstance the false statement given in the 1946 application does not, standing alone, compel the rejection of his claim that he has not been politically active or in any respect identified with the Communist movement for the past seventeen years. His sworn statements of discontinuance of the proscribed activities were put to the test of adverse examination by government officials. The findings, based not only upon relator's testimony, but also upon that of the witnesses called by the government, support the claim of discontinuance and non-activity.

■ Had the slightest evidential matter been submitted to support the allegation in the return that there is "substantial reason to believe" the discontinuance of relator's open activities was a subterfuge, the issue would be resolved in favor of upholding the denial of bail. But this conclusory allegation, unsupported as it is, and inconsistent with the Special Inquiry Officer's findings, is too indefinite and unsubstantial a basis upon which to warrant detention without bail.[6]

6. United States of America ex rel. Nukk v. District Director, 205 F.2d 242, decided the other day by the Court of Appeals for this Circuit, is not to the contrary. The facts there are substantially different from those in the instant case. The Court in upholding the refusal of the District Court to interfere with the denial of bail pointed out (1) a final order of deportation had been entered; (2) relator failed to testify in his own behalf when called as a witness at the deportation proceeding; (3) he made no attempt to show that his membership in the Communist Party had terminated or that he had not been, or was not continuing to be, active in supporting or extending the Party's unlawful objectives; (4) he offered no evidence in support of the writ of habeas corpus but was content to rest on his unsupported assertion in the traverse to the government's return, and, finally, a complete failure to carry the burden of proof.

The government does not contend that relator, if released on bond, will not be available in connection with the pending deportation proceedings; and there is nothing in the record to indicate that he will not honor requirements for his appearance.

Upon all the facts, it appears that the relator here has sustained the burden that his detention without bond was " 'without a reasonable foundation.' " [7] The writ is sustained to the extent of enlarging the relator on bond in an amount to be fixed in the order to be entered. Counsel are requested to submit suggestions as to the amount thereof.

Settle order on one day's notice.

7. Carlson v. Landon, 342 U.S. 524, 540–541, 72 S.Ct. 525, 534, 96 L.Ed. 547.