**UNITED STATES ex rel. KLIG et al. v. SHAUGHNESSY, District Director of Immigration, etc.**

Civ. Nos. 62-105, 62-41, 62-42, 61-400, 61-334, 61-393, 62-101, 62-100, 61-337, 61-376, 62-103, 61-368, 61-373, 62-104, 62-102, 62-17.

United States District Court
S. D. New York.
Nov. 17, 1950.

Witt & Cammer, New York City, for relators Schneider, Tarazona, Klig.

Carol King, New York City, for relator Borich.

Carol King and Isidore Englander, New York City, for relator Bittelman.

Carol King and Blanch Freedman, New York City, for relators Jones, Scholnick, Gannett.

Englander & Englander, New York City, for relators Lightcap, Pirinsky, Paivio.

Mary M. Kaufman, New York City, for relator Dmytryshyn (Dolin).

William B. Cherevas, New York City, for relators Busch, Cattonar.

Ira Gollobin, New York City, for relator Siskind.

Herman Rosenfeld, New York City, for relator Smith.

Milton Friedman, New York City, for relator Yaris.

Irving H. Saypol, U. S. Atty., New York City (Nathan Skolnick, Asst. U. S. Atty., William J. Sexton, Asst. U. S. Atty., Louis Steinberg, District Counsel U. S. Department of Justice Immigration and Naturalization Service, Max Blau, U. S. Department of Justice Immigration and Naturalization Service, and Lester Friedman, U. S. Department of Justice Immigration and Naturalization Service, all of New York City, of counsel), for respondent.

RYAN, District Judge.

The sixteen relators filed separate petitions for habeas corpus. The writs were awarded; returns and traverses filed; and a hearing held pursuant thereto. All the petitions raise fundamentally the same issues, and, therefore, will be disposed of together in this opinion. Where material factual variations appear, they will receive appropriate comment.

All the relators had been previously arrested pending deportation proceedings under warrants alleging violation of one or more of the provisions of the Anarchist Exclusion Act of October 16, 1918, as amended, 8 U.S.C.A. § 137. In a few instances, other deportable offenses were charged, but these are not material. Each of the relators was released under bond ranging in amount of $1,000 to $10,000; in one instance, bail being granted only after judicial intervention.

Shortly after the passage of the Internal Security Act of 1950, and pursuant to instructions from the Acting Commissioner of Immigration and Naturalization, the bonds of the relators were revoked and they were returned to custody. The relators allege that their detention under these circumstances constituted an abuse by the Attorney General of his discretionary authority to detain aliens pending deportation hearings.

At the outset, the court is confronted by the government's contention that the power of the Attorney General to confine an alien pending deportation hearings is absolute and not subject to judicial review. This contention is grounded on the following language in Section 23 of the Internal

Security Act, which amends Section 20 of the Immigration Act of February 5, 1917, as amended, 8 U.S.C.A. § 156: "Pending final determination of the deportability of any alien taken into custody under warrant of the Attorney General, such alien may, in the discretion of the Attorney General (1) be continued in custody; or (2) be released under bond in the amount of not less than $500, with security approved by the Attorney General; or (3) be released on conditional parole."

Correctly to understand the meaning of this language, it is necessary to consider the section as it read prior to the amendment and the judicial construction it has received. The section previously read, in pertinent part: "Pending the final disposal of the case of any alien so taken into custody, he may be released under a bond in the penalty of not less than $500 with security approved by the Attorney General".

■ The sixth circuit has interpreted the section in its earlier form as conferring upon the alien an absolute right to bail on request, and withholding all administrative discretion to deny bail. Prentis v. Manoogian, 6 Cir., 1926, 16 F.2d 422. However, the second circuit subsequently held that the section vested the Attorney General with power to deny bail, subject to judicial review for abuse of discretion. United States ex rel. Potash v. District Director of Immigration, 2 Cir., 1948, 169 F.2d 747. In the light of this difference between the circuits, the more probably correct interpretation of the amendment is that Congress intended thereby to adopt the Potash construction as opposed to that set forth in the Manoogian case. If Congress had proposed to override the Potash decision as well as that of the Manoogian case, language explicitly divesting the courts of the power to review for abuse of discretion would undoubtedly have been employed. This conclusion makes it unnecessary to consider the grave constitutional questions which would arise if the construction urged by the government were to be accepted.

With this finding, it becomes necessary to ascertain whether the Attorney General has abused his discretion in detaining relators without bail pending their deportation hearings. The factual allegations of the various petitions for habeas corpus, (which are substantially undisputed by the Government), present essentially the same pattern.

In general, relators are individuals who have been resident in this country for a number of years, some of them for well over thirty years. Many are married to citizens spouses, and have raised families in this country. Deportation proceedings were commenced against them from several months to two years before their recent rearrest; all were at that time enlarged by the government in moderate bond, judicial intervention being required in the one instance only. While out on bond, relators' conduct in no way differed from their conduct before their original arrest, which the Attorney General did not then deem inconsistent with their enlargement in moderate bond. They have observed fastidiously all conditions of the bond under which they were released; they have at all times been available whenever required by the government, and there is no indication that they will not continue to be so in the future.

In its returns to the petitions, the government quotes the charges made against each relator in the original warrant of arrest, which relates to one or more sections of the Anarchist Act of 1918, as amended 8 U.S.C.A. § 137, with some immaterial additions in several instances. Although the particular violations charged to each relator vary to some extent, they fundamentally come down to an accusation that prior to, during, or after entry into this country, the relators were members of, or affiliated with an organization advocating the overthrow of the government by force. In no single case, does the warrant of arrest contain the charge that the relator presently is guilty of such violation, as, indeed, it need not charge for purposes of deportability. The government also alleges that, following the adoption of the Internal Security Act, it undertook to review relators' cases, and others of a similar nature, and concluded that relators represented a "security peril." As to the factual evidence

on which the government based this conclusion, the court has not been advised.

Finally, the government, both in its returns and in its brief, quotes extensively from Section 2 of the Internal Security Act, 50 U.S.C.A. § 781, wherein Congress set forth its findings with respect to the Communist party on the basis of which the law was presumably enacted. Essentially, the Congress found that the Communist party is a disciplined organization, responsive to the orders of a foreign power bent on world domination, and devoted to the overthrow of the United States government by force and violence; and that the members of the Communist party and associated organizations had in effect transferred their allegiance to a foreign power.

Particularly noteworthy in the government's returns is the failure to even suggest that if relators are enlarged on bond, they might be unavailable when needed in connection with their deportation proceedings. Apparently, revocation of bail is sought to be justified solely on the claim that relators constitute a "security peril." But not a scintilla of evidence relating to any recent activity on the part of any relator has been adduced to substantiate this general allegation, nor has there been any denial of relators' assertions that the revocation of their bail was in no way attributable to any change in their conduct after their initial enlargement on bail.

All that has been set forth to support the government's contention that relators constitute a menace to the country are the aforementioned citations from the Congressional findings of fact in Section 2 of the Internal Security Act. But these findings are totally irrelevant here; the government has not even alleged, much less proved, that any relator is, or recently was, associated with the Communist party. It thus becomes unnecessary for this court to determine whether, in a deportation proceeding, in no way involving any exercise of general war power, the statement of policy in the Internal Security Act suffices to overcome the traditional American principle that guilt is personal.

■ ■ It is not unappropriate to refer here to the Eighth Amendment to the Constitution of the United States, one of that series of amendments collectively known as the Bill of Rights, which prohibits the imposition of excessive bail. Certainly, the principle inherent in that amendment applies to deportation proceedings, whether or not such proceedings technically fall within its scope. That principle cannot be reconciled with the government's denial of bail to these relators under the circumstances here set forth. It is the conclusion of this court, as it was that of all but one of the courts before whom the same question has recently arisen, that the denial of bail to relators herein was arbitrary and an abuse of discretion on the part of the Attorney General.

Writs sustained; relators released on bonds in the same amount as that given prior to their instant arrest.