## UNITED STATES ex rel. BITTELMAN v. DISTRICT DIRECTOR OF IMMIGRATION & NATURALIZATION AT PORT OF NEW YORK.

United States District Court
S. D. New York.

Aug. 20, 1951.

Carol King, New York City, for relator.

Irving H. Saypol, U. S. Atty. for the Southern Dist. of New York, New York City, for respondent, William J. Sexton, Asst. U. S. Atty., Lester Friedman, Atty., Immigration and Naturalization Service, United States Dept. of Justice, New York City, of counsel.

WEINFELD, District Judge.

This proceeding does not present any question as to the right of the relator to be released on bond pending a hearing of deportation charges or the amount thereof. That has previously been determined and bail fixed in the sum of $5,000. United States ex rel. Klig v. Shaughnessy, D.C., 94 F.Supp. 157. The pending issue is the refusal of the Immigration authorities, acting for the Attorney General, to accept Government securities tendered for relator's release by a friend, whose title to the securities is not in dispute. The basis of rejection is that the proposed surety is unqualified under administrative standards for acceptance of such sureties.[1]

The legal issues which have been pressed by relator with respect to the Attorney General's right to require personal sureties where Government bonds or cash are offered, which necessarily also bring into question the administrative standards or so-called norms to pre-qualify such sureties and the reasonableness thereof—questions which are not free from doubt—need not now be determined in view of the facts presented on this record.[2]

Assuming, arguendo, the right to require personal sureties, the question still remains

1. The respondent refers to these as administrative standards or norms issued to District Directors of Immigration to determine qualifications of proposed sureties. Upon the argument of the writ it was conceded that they have not been published either in the Federal Register or C.F.R.

2. The Government concedes that if relator had tendered his own funds his release would be effected without additional surety and no questions asked. Further, Regulation 8 C.F.R. 169.1(a) authorizes acceptance of bonds from corporate sureties. Neither instance appears consistent with an interpretation requiring personal sureties.

as to whether the rejection of the bonds in this case was a reasonable exercise of discretion. United States ex rel. Potash v. District Director of Immigration, 2 Cir., 169 F.2d 747; United States ex rel. Klig v. Shaughnessy, supra; Prentis v. Manoogian, 6 Cir., 16 F.2d 422.

The facts are as follows:

Petitioner has been a resident of the United States since 1912. He was arrested in January 1948 on an Immigration Warrant of Arrest seeking his deportation as an alien who believes in and advocates and teaches the overthrow by force and violence of our Government. He was released upon furnishing a bond in the sum of $5,000. He remained at large under this bond until October 1950, when the Attorney General, following enactment of Section 23 of the Internal Security Act of 1950, 8 U.S.C.A. § 156, as amended, revoked the bond and held him without bail. This action was challenged by the relator who obtained a writ of habeas corpus, which was sustained by District Judge Ryan, who ordered his release upon bond in the same amount as previously furnished. United States ex rel. Klig v. Shaughnessy, supra. This administrative bond in the sum of $5,000 was then furnished by the Civil Rights Congress and relator was again released. He remained at large until about July 1951, when he was arrested upon an indictment charging violation of the Smith Act, 18 U.S.C.A. § 2385, and released in bail in the sum of $20,000, which is still in effect. He was at liberty less than twenty-four hours when, on August 2, 1951, he was notified to appear, and did appear, before the Immigration authorities who revoked the $5,000 bond furnished by the Civil Rights Congress upon the ground it was not a proper surety following Court rulings to this effect. The relator was taken into custody and has since been detained pending the posting of a new bond of $5,000 with proper surety.

The record discloses that at all times during which relator has been at large under the bonds heretofore furnished, he has made himself amenable to process and responded to all requests for appearances.

Two persons have attempted to post the required bonds. First, one Symington offered United States Treasury securities to effect relator's release, and after questioning by an Immigration Examiner was found not qualified as a surety. The issue with respect to Symington is academic for the bonds are no longer available. The rejected bonds have since been accepted in the District Court as part bail to secure the appearance of another defendant charged with violation of the Smith Act and are now on deposit with the Clerk of this Court.

Following the rejection of the first proposed surety, one Rudolph Politzer offered $5,000 in Treasury certificates, was also questioned by the Immigration authorities and he, too, was found not qualified. His testimony before the Examining Officer reveals the following: That he has known the relator for six years; has read many of his writings on a social problem in which he is particularly interested; has visited the relator at his office on ten, fifteen or twenty occasions; has had many discussions with him, and has heard him lecture. He further testified that he is a good, but not a close, friend of relator, whom he holds in high regard as a capable writer and an astute thinker. Motivated by these considerations he voluntarily offered to post the securities.

The bonds were purchased with $2,500 of his own funds and $2,500 borrowed from a friend, one Hoffman, who also has been a friend of relator for the past six years. Both are clothing cutters, are regularly employed and earn approximately $100 per week, and are members of the same local union of the Amalgamated Clothing Workers of America. The record abundantly establishes that the bonds were purchased out of the savings of each, and in the case of Politzer were accumulated over a four-year period by deposits of small sums. Indeed, no claim is made by the Immigration authorities that the money for the purchase of the bonds came from any other source or that title is not in Politzer.

Politzer also testified that he is not, and has never been, a member of the Commu-

nist Party nor attended any of its meetings, and that other than his union the only other organization of which he is a member is an affiliate of the International Workers Order. Although he has been a member for thirteen or fourteen years, he has never held office in either the affiliate or the parent organization. These facts and those presented by Louis Hoffman, which are substantially similar, are uncontroverted by the Government.

Even applying the standards or the so-called norms to determine the qualification of sureties, it appears that Politzer meets all except one. Thus, he has known the alien for some time and is in a position to produce him; lives in the Immigration District and near him and is in a position to know his whereabouts; has actual title to the bonds and has freely revealed their source. The facts on this record make it an inescapable conclusion that the sole basis for finding Politzer unqualified, without regard to any other evidence of disqualification, is his membership in an affiliate of the International Workers Order, which is on the Attorney General's proscribed list of subversive organizations.[3] The return to the writ confirms this. Paragraph 10(a).

The validity of the listing of the organization has recently been cast in doubt by the Supreme Court and presents serious Constitutional questions. Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 71 S.Ct. 624.

Under the facts disclosed by this record, the refusal to accept Government bonds from the proposed surety solely on the ground of his membership in the proscribed organization, in the absence of any other evidence showing his lack of qualification, is not an exercise of reasonable discretion but an abuse of discretion.

The writ is sustained unless the District Director accepts the proffered bonds by 4:00 p. m. Tuesday, August 21, 1951. In the event of refusal to accept the bonds,

the order to be entered hereon shall contain a provision permitting their deposit with the Clerk of this Court under appropriate conditions.

Settle order on three hour's notice.

---

3. The final standard or norm for qualification is that if the alien is a Communist the surety may not be a member of that party or any group on the Attorney General's proscribed list of subversive activities.