**UNITED STATES ex rel. YARIS v. ESPERDY, Acting District Director of Immigration and Naturalization Service, Port of New York.**

United States District Court
S. D. New York.

Dec. 8, 1952.

Milton H. Friedman, New York City, for relator.

Myles J. Lane, U. S. Atty., S. D. New York, New York City, William J. Sexton, Asst. U. S. Atty., New York City, of counsel, Louis Steinberg, District Counsel, U. S. Immigration and Naturalization Service, New York City, Max Blau, U. S. Immigration and Naturalization Service, New York City, for respondent.

IRVING R. KAUFMAN, District Judge.

The relator, Harry Yaris, is presently in the custody of the Immigration and Naturalization Service on Ellis Island where he is being detained without bail. By this writ of habeas corpus he challenges the legality of his detention asserting that the refusal of bail constitutes an abuse of the discretionary authority vested in the Attorney General.[1] Yaris was taken into custody on or about July 6, 1950 pursuant to an

---

1. Section 23 of the Internal Security Act of 1950, 64 Stat. 1010, states: " * * * Pending final determination of the deportability of any alien taken into custody under warrant of the Attorney General, such alien may, in the discretion of the Attorney General (1) be continued in custody; * * *."

immigration warrant of arrest, dated July 5, 1950, which charged him

"with being unlawfully in the United States and subject to deportation, in that at the time of and after entry he was a member of an organization which advocates and teaches the overthrow of the government of the United States by force and violence, and which writes, circulates, prints, publishes and displays written or printed matter, so advising, advocating and teaching."

He was also charged

"with having entered the United States unlawfully, in that at the time of such entry he was an immigrant not in possession of a valid immigration visa as required by the Immigration Laws."

An additional charge was subsequently added

"that he was subject to deportation in that prior to, at the time of, and after entry into the United States, he was a member of the Communist Party of the United States."

On July 6, 1950 Yaris was released on bond until on or about October 23, 1950, when, after the passage of the Internal Security Act of 1950, his bond was revoked and he was returned to the custody of the Immigration and Naturalization Service. Judge Sylvester Ryan of this court on November 17, 1950 sustained a writ directing relator's release on the same bond as had theretofore been filed. United States ex rel. Klig v. Shaughnessy, D.C.S.D.N.Y. 1950, 94 F.Supp. 157. Judge Ryan concluded that

"the denial of bail to relators herein was arbitrary and an abuse of discretion on the part of the Attorney General." 94 F.Supp. at page 160.

In the main, Judge Ryan's decision was predicated on his finding that

" * * * not a scintilla of evidence relating to any recent activity on the part of any relator has been adduced to substantiate this general allegation [that relator is a security peril], nor has there been any denial of relators' assertions that the revocation of their bail was in no way attributable to any change in their conduct after their initial enlargement on bail." 94 F.Supp. at page 160.

On November 28, 1950 a hearing was held before a Hearing Officer. Relator was represented by counsel and declined to testify as a government witness at that time. Upon request of counsel for the relator an adjournment was granted on the grounds that he needed time to prepare his defense, his cross-examination and further that a criminal proceeding was pending against the relator which might affect the course he would follow in the deportation proceeding. The hearing was thereupon adjourned without date, subject to call by the government.

On March 10, 1952, the United States Supreme Court decided the case of Carlson v. Landon, 342 U.S. 524, 72 S.Ct. 525, wherein it was held that the refusal of bail

"When in the judgment of the Attorney General an alien Communist may so conduct himself pending deportation hearings as to aid in carrying out the objectives of the world Communist movement". 342 U.S. at page 544, 72 S.Ct. at page 536.

is not arbitrary or capricious or an abuse of power nor does it violate Constitutional mandates.

The return to the instant writ states:
"after the decision in Carlson v. Landon, supra, the records and files of the Immigration and Naturalization Service relating to this relator were reexamined and upon the basis of information contained therein concerning his membership in the Communist Party of the United States and his activity in supporting that Party's doctrine, it was concluded that there was a reasonable basis for anticipating that he would so conduct himself in aid of the objectives of the world communist movement as to constitute a menace to public interest, if permitted to be at large. * * *"

The return further states that:
" * * * instructions were given the respondent by or under the direc-

tion of the Commissioner of Immigration and Naturalization, acting for the Attorney General, to require relator's surrender into custody and that relator be continued in custody therein, pending final determination of his deportability."

The relator finally surrendered on October 24, 1952, into the custody of the Immigration and Naturalization Service and was then served with a new warrant of arrest duly issued and executed.

Further hearings were held on November 7, 1952 and on November 12, 1952. After three Government witnesses testified, relator was asked to take the stand and testify. He refused to do so. The examining officer requested an adjournment of "sixty days" in order to arrange for the production of further witnesses in support of the charges against the relator. The hearing was thereupon adjourned subject to call of the Government, but not later than January 9, 1953. Thereafter arrangements were made to resume the hearings on December 1, 1952 and because of the failure of certain witnesses subpoenaed by the Immigration Service to appear on that date, adjournment sine die was granted.

In support of his claim that the Attorney General's denial of bail was without reasonable foundation the relator points to the fact that he

"* * * is an honorably discharged veteran of World War II. He served as a corporal with the 482nd Bomb Squadron of the Army of the United States. He has been credited with participation in the following battles and campaigns: 'Air Offensive Japan Eastern Mandates Western Pacific'. He is the holder of the following decorations and citations: American Service Medal Asiatic Pacific Service Medal Good Conduct Medal World War II Victory Medal."

He states further

"Ever since November 17, 1950 and indeed ever since July 6, 1950 the re-

lator has continued to live with his wife at the address stated above, and has been regularly employed in the City of New York. He has at all times complied with the terms and conditions of his bail, and has continued to be available for and responsive to any directions which were or might be issued by the respondent."

Were it not for the Supreme Court's ruling in Carlson v. Landon, supra, Judge Ryan's opinion in United States ex rel. Klig v. Shaughnessy, supra, would be dispositive of the issues presented by this writ.

In Carlson v. Landon, four petitioners who had previously been arrested and admitted to bail on warrants charging them with membership in groups advocating the overthrow of the Government by force and violence, and issued before the passage of the Internal Security Act of 1950,[2] were again arrested under warrants issued after the enactment of that Act. On this latter occasion the warrants directed that the petitioners, charged with being alien members of the Communist Party, be held in custody pending determination of deportability. Petitions for habeas corpus were filed alleging that the detention without bond was in violation of the Fifth and Eighth Amendments of the Constitution of the United States. The Government filed its returns defending the order of detention

"* * * on the ground that there was reasonable cause to believe that petitioners' release would be prejudicial to the public interest and would endanger the welfare and safety of the United States. These returns were countered by petitioners with allegations of their many years residence spent in this country without giving basis for fear of action by them inimical to the public welfare during the pendency of their deportation proceedings, their integration into community life through marriage and family connections, and their meticulous adherence to the terms of previous bail, al-

2. The Court concluded that "In our view of the issues now here, these former happenings are immaterial to our consideration of this, writ of certiorari." 342 U.S. at page 529, note 8, 72 S.Ct. at page 528.

lowed under a former warrant charging deportability." 342 U.S. at page 529, 72 S.Ct. at page 528.

The Court pointed out that detention is necessarily a part of the deportation procedure and noted that the change in language in the Internal Security Act was

"intended to clarify the procedure in dealing with deportees and to 'expressly authorize the Attorney General, in his discretion, to hold arrested aliens in custody.'" 342 U.S. at page 539, 72 S.Ct. at page 533.

Carlson discussed the rulings of the Court of Appeals, for the Sixth Circuit, in Prentis v. Manoogian, 1926, 16 F.2d 422, 424, as well as those of the Second Circuit in United States ex rel. Potash v. District Director of Immigration and Naturalization, 1948, 169 F.2d 747. It should be noted that both of these decisions were relied on heavily by Judge Ryan in his November 1950 decision. The Supreme Court continued in Carlson, 342 U.S. at pages 539, 540, 72 S.Ct. at page 534:

"It was in the light of these cases that Congress inserted in the bail provisions the phrase 'in the discretion of the Attorney General,' the lack of which very phrase the Manoogian case held made bail a right of the detained alien. The present statute does not grant bail as a matter of right."

While it is true that the Attorney General's discretion is subject to review on the showing of clear abuse, the discretion

"reposed in the Attorney General is at least as great as that found by the Second Circuit in the Potash case, supra, to be in him under the former bail provision." 342 U.S. at page 540, 72 S.Ct. at page 534.

Judge Augustus N. Hand, speaking of the showing which the alien must make on a proceeding of this character, prior to Carlson, stated in United States ex rel. Young v. Shaughnessy, 2 Cir., 1952, 194 F.2d 474, 475, bail denied, 1952, 343 U.S. 913, 72 S.Ct. 653.

"While we held in United States ex rel. Potash v. District Director of Immigration and Naturalization, 2 Cir., 169 F.2d 747, that the action of the Attorney General was under the then existing law judicially reviewable, we nevertheless carefully said: 'However, in any consideration of his denial of bail it should always be borne in mind that the court's opinion as to whether the alien should be admitted to bail can only override that of the Attorney General where the alien makes a clear and convincing showing that the decision against him was without reasonable foundation.' 169 F.2d at page 751."

See also United States ex rel. DeGeronimi v. Shaughnessy, 2 Cir., 1951, 187 F.2d 896.

This case is not one of unusual delay in detention. Yaris has been detained less than two months. This is a case which seeks to question the Attorney General's right, under the facts presented, to hold Yaris without bail upon his arrest.

The relator by traverse to the return has declined to admit or deny in the exercise of his rights under the Fifth Amendment to the Constitution

(1) that he is an alien, a native of Russia, who has entered the United States in or about 1914;

(2) that in or about the year 1930, relator obtained a United States passport by falsely representing himself to be one Abram Gottlieb, a United States citizen, and with that passport traveled to the Union of Soviet Socialist Republics;

(3) that he remained in the Union of Soviet Socialist Republics for the period of almost two years, and during that period attended the Lenin School in Moscow, Russia, where he took courses, designed to aid him in carrying out the objectives of the world communist movement;

(4) that during the period of his attendance at the Lenin School, he was a member of the Communist Party of the United States, and had been a member and active in the affairs of that Party;

(5) that he returned to the United States in or about the year 1932, falsely posing as

a citizen of the United States, in possession of the aforesaid passport in the name of Abram Gottlieb, and was readmitted to the United States;

(6) that subsequent to his said return to the United States, he continued his membership in the Communist Party of the United States and continued to be active in carrying out the objectives of that Party, in furtherance of the aims and policies of the world communist movement.[3]

Nowhere in the petition or in the traverse is there any assertion by the relator that he is not a Communist or that he is not active in Communist affairs or that he has not been a member and active in the Communist Party since his return to the United States.

The government argues that the relator's refusal to deny the first six allegations of the return (upon the exercise of his right under the Fifth Amendment to the Constitution) permits the inference that the relator was active as a Communist, at least so recently as not to be barred by the Statute of Limitations, and that his actions were of such a character that they might make him amenable to prosecution. The argument has some merit but I do not base my decision upon it.

█ Approaching this case, as I do, so soon after the recent exhaustive consideration given to this problem by the Supreme Court, my course is made inevitable. The rationale of the Carlson case, as I read it, is that the Attorney General is vested with the discretion of determining whether bail should be granted or whether the relator should be held in custody. It is only upon the clearest showing of abuse of discretion, a showing equal to a complete absence of any reasonable foundation for the detention, that there may be intervention by the judicial branch of the Government.

█ Fully recognizing that I sit as a Judge of an inferior court, approaching a problem which has been extensively con-

sidered by nine Justices of the United States Supreme Court, who filed five separate opinions in the Carlson case, I am compelled to conclude that the rationale of Carlson leaves me no alternative but to refuse to overrule the discretion of the Attorney General as exercised in the instant case. The relator has fallen far short of the mark necessary to upset such discretion.

█ The relator makes the further argument that in view of his previous bailing, the Attorney General must show some change in circumstances before he may be detained. This too was rejected by the Supreme Court in Butterfield v. Zydok, 1952, 342 U.S. 524, 546, 72 S.Ct. 525, a companion case to Carlson.

The Court observed that:

"Finally, respondent Zydok argues that his rearrest on the outstanding warrant, after he had once been released on bail, was improper. The inquiry on habeas corpus is limited to the propriety of Zydok's present detention. McNally v. Hill, 293 U.S. 131, 136, 55 S.Ct. 24, 26, 79 L.Ed. 238." 342 U.S. 546, 72 S.Ct. 537.

The writ of habeas corpus is dismissed.

---

3. Refusal to admit or deny, with respect to items (4) and (6) of the return was also based on the belief that said allegations were immaterial since relator was not charged with present membership in the Communist Party but it would seem that the charge of "continued membership" is broad enough to include present membership.