UNITED STATES ex rel. ANGEL

v.

SHAUGHNESSY.

United States District Court
S. D. New York.
May 12, 1954.

2. Inland Rules, Article 18.

Harold I. Cammer, Ralph Shapiro and Ira Gollobin, New York City, for relator.

J. Edward Lumbard, U. S. Atty., New York City, by Harold R. Tyler, Asst. U. S. Atty., New York City, Lester Friedman, New York City, Attorney in the Office of the District Counsel, Immigration and Naturalization Service, Department of Justice, of counsel, for respondent.

IRVING R. KAUFMAN, District Judge.

The relator, Morris Angel, is presently in the custody of the Immigration and Naturalization Service on Ellis Island where he is being detained without bail pending deportation which has been ordered. By this writ of habeas corpus he challenges the legality of his detention, asserting that the Attorney General abused his discretionary authority in refusing bail. Angel was arrested on March 16, 1954, pursuant to a warrant of arrest dated March 12, 1954, which charged him with being illegally in the United States and subject to deportation in that: (1) After entry, he was a member of the Communist Party of the United States, and (2) he failed to maintain the non-immigrant status in which he was admitted.

After a hearing before a Special Inquiry Officer of the Immigration and Naturalization Service the relator was found deportable on the charges stated in the warrant of arrest. The action of the Attorney General in denying bail, which is challenged in the present petition, was taken prior to the deportation hearing, and pending a determination of deportability. This determination has now been made as indicated. The issue in the light of such finding is whether the present detention of the petitioner without bail is a proper exercise of the Attorney General's discretionary power under 8 U.S.C.A. § 1252.

Relator's petition for the present writ recites inter alia that:

(1) He is married to an American citizen, and has one son born in the United States; that he lives with his family in his home in Danbury, Connecticut, and that he has continuously resided in the United States since 1929.

(2) He has been continuously employed by Local 64, Joint Board Fur Dressers and Dyers Union, International Fur and Leather Workers Union, first as an organizer, and since 1941 as manager of Local 64, and that he has achieved a place of prominence and distinction in the labor movement in the City of New York.

(3) In 1945 relator was invited to report for an interview at the offices of

the Immigration and Naturalization Service in the City of New York and that relator responded to such invitation, voluntarily submitted to such interview and on many later occasions has responded to such invitations and submitted to such interviews and at no time has refused to do so, although informed that the Service could not compel his attendance.

(4) By reason of the foregoing, and of relator's family ties and his position in his union and in the fur industry, relator, if enlarged on bail, will be available at all times for future proceedings, and that his detention without bail violates his constitutional rights, and is arbitrary, capricious and unreasonable.

The return to the writ states inter alia [1] that in determining that relator be continued in custody, the following factors, among others, were administratively considered: That relator is and has been an active member of the Communist Party of the United States, and has engaged in subversive Communist activities, and that if enlarged on bail the Government believes he will continue to conduct himself in aid of the world Communist movement so as to constitute a menace to the security of the United States.[2]

1. The Government urges, at paragraph 6 of the return, that judicial review in the present case is limited under 8 U.S.C.A. § 1252(a) to a consideration of whether the Attorney General is proceeding with reasonable dispatch. Such a construction of the Statute has been repeatedly rejected by the Court of Appeals for this Circuit. See United States ex rel. Yaris v. Esperdy, 2 Cir., 1953, 202 F.2d 109; United States ex rel. Belfrage v. Shaughnessy, 2 Cir., 212 F.2d 128.

2. The Government's return noted in part: In determining that the relator herein be continued in custody, the following factors, among others, were administratively considered:

(a) The deportation proceedings instituted against the relator are predicated in part upon the most serious charge of membership in the Communist Party of the United States.

(b) The Government expects to establish by overwhelming and conclusive evidence that the relator was an active member of the Communist Party and is clearly deportable on the first charge in the warrant of arrest. In addition, a record of the relator's entry into the United States as a deserting seaman exists and he is equally clearly deportable on the second charge in the warrant of arrest.

(c) By reason of the relator's active membership and participation as a functionary of the Communist Party of the United States, he has demonstrated his adherence to the Communist cause and his acceptance of the discipline of the world Communist movement. It is, accordingly, believed that the relator would abscond rather than face deportation if he were ordered to do so by the Communist Party in order to remain in the United States and carry on his activities in an underground capacity.

(d) The relator is now and has been for many years an active member and functionary of the Communist Party of the United States.

(e) The relator has been highly active in the secret and underground section of the Communist Party's activities and has been for many years assigned as a functionary to assist in controlling a labor union by the Communist Party. In this connection, the relator has been one of the leaders of the furriers fraction of the Communist Party.

(f) The relator has done considerable organization work for the Communist Party, has assisted that party in its infiltration into and the taking over of control of his labor union and, in recent years, particularly in 1949, was one of the sponsors and organizers of the Communist participation in the May Day activities in New York City.

(g) The relator has been one of the leaders of the Communist Party in various propaganda drives undertaken by that organization and is a specialist in that field who is continually called upon by the Communist Party to instruct and guide its various front organizations in propaganda campaigns.

(h) The relator is now one of the chief assistants to the president of a labor union who has admittedly been an active Communist for many years.

(i) The relator has been one of the originators of various "peace" drives under the direction of the Communist Party with the obvious design of weakening this Government's participation in the Korean war and furthering the propaganda aims of the Russian government.

(j) In addition to the foregoing factors, substantial information from reliable confidential sources, the disclosure of which would be prejudicial to the best

The supplemental return states that at relator's deportation hearing on April 5, 1954, he admitted past membership in the Communist Party of the United States, but refused to answer any other question concerning his activities and the extent and duration of his membership, resting upon his constitutional privilege against self-incrimination. The supplemental return states that relator then indicated for the record his desire to withdraw his affirmative answer as to membership in the Communist Party and to substitute for such answer a refusal to answer on the ground of self-incrimination.[3]

In the traverse to the return and in a supplemental affidavit filed by relator, he asserts that he has not been a member of the Communist Party for several years and further denies certain charges of past Communist activity. He states that his sole and entire allegiance is to the United States.

An oral hearing has been afforded relator in this habeas corpus proceeding. Six witnesses appeared on his behalf and testified solely to his good reputation in the fur industry for veracity.[4] None of these witnesses, however, knew the relator socially, nor had any of them ever discussed with him his political philosophy.

Relator testified that he was not at present a member of the Communist Party and that he had neither been a member nor engaged in any Communist activity in 1952, 1953 or 1954. When questioned as to his Communist Party membership and/or Communist activity prior to 1952, relator refused to answer, claiming his privilege against self-incrimination under the Fifth Amendment. Relator similarly refused to testify when asked if he had been a member of the Communist Party before 1952, and when and in what manner he had dissociated himself from the Communist Party. He did testify, however, that at no time was he directed to engage in underground Communist activity. In sum, relator denied both Communist Party membership and Communist activity in 1952, 1953 and 1954, but refused to say anything further as to other years. He takes the position that since, on his own assertion, he is not at present and was not in 1953, or 1952, either a member of the Communist Party or engaged in Communist activity, it is unreasonable for the Attorney General to deny him bail on the ground that, if released, he would be a menace to the national security.

It is to be noted that the Attorney General's denial of bail in cases like the present is to be upset only upon the clearest showing of an abuse of his discretionary power. United States ex rel. Yaris v. Esperdy, D.C.S.C.N.Y.1952, 108 F.Supp. 735, affirmed 2 Cir., 1953, 202 F.2d 109.[5] The action of the Attorney General is presumptively correct and

---

interests of the United States, has established to the satisfaction of the administrative authorities that the relator herein is a fanatical Communist whose principal and sole loyalty is to the government of Soviet Russia to whose aims and subversive activities he has zealously devoted himself for many years.

(k) It has been the administrative judgment that the relator herein will continue to conduct himself in aid of the world Communist movement if enlarged on bond so as to constitute a menace to the internal security of the United States.

3. The Special Inquiry Officer found the attempted withdrawal ineffective and further found that the relator fully understood the answer he had given when he admitted past Communist Party membership.

4. Three witnesses actually took the stand. The substance of the testimony of the other three witnesses was agreed upon by stipulation.

5. As the Court of Appeals for this Circuit noted in United States ex rel. Potash v. District Director of Immigration, 2 Cir., 1948, 169 F.2d 747, 751–752:

"[I]n any consideration of [the Attorney General's] denial of bail it should always be borne in mind that the court's opinion as to whether the alien should be admitted to bail can only override that of the Attorney General where the alien makes a clear and convincing showing that the decision against him was without a reasonable foundation."

The Potash case was decided under the provisions of the Immigration Act of 1917. Section 20, as amended. Since

the burden is on the alien to show the contrary. Carlson v. Landon, 1952, 342 U.S. 524, 72 S.Ct. 525, 96 L.Ed. 547; United States ex rel. Nukk v. District Director of Immigration, 2 Cir., 1953, 205 F.2d 242, 244. Proof of membership in the Communist Party "and present or recent 'personal activity in supporting and extending the Party's philosophy concerning violence' furnishes a sufficient basis for detention." United States ex rel. Belfrage v. Shaughnessy, D.C.S.D.N.Y.1953, 113 F.Supp. 56, 60, affirmed, 2 Cir., 212 F.2d 128.

■ In the Carlson case, the Attorney General was held not to have abused his discretion in denying bail to four petitioners when only one had formally denied, as to himself, the Government's charges that, at the time of arrest, each was an active member of the Communist Party. The Court found that since the petitioners were active Communists, the Attorney General had not abused his discretion in detaining them without bail. Carlson v. Landon, supra, 342 U.S. at page 530, 541, 72 S.Ct. 525. In the Yaris case, a similar result was reached by this Court when the relator declined either to admit or deny the Government's charges of Communist Party membership or activity. United States ex rel. Yaris v. Esperdy, supra, 108 F.Supp. at page 738; Id., 202 F.2d at page 110. Under the applicable statute, such charges by the Government are accepted as true unless impeached. 28 U.S.C.A. § 2248. In the Nukk case, the denial of bail was also upheld where the relator rested on a bare assertion of unreasonableness in his traverse and refused otherwise to deny the Government's allegations. United States ex rel. Nukk v. District Director of Immigration, supra, 205 F.2d at page 244.

■ The question presented in the instant case is whether relator's bare denial of membership and/or Communist activities in the last three years is sufficient support for his contention that the Attorney General has abused his discretion in detaining relator without bail. I conclude that no such abuse of discretion has been shown.

The Government charges that for some twenty years—or for most of his adult life—relator has been an active Communist, and that he continues to espouse the Communist cause. Except for certain general denials in the traverse, which he did not repeat at the hearing, the relator has neither admitted nor denied these charges for the years prior to 1952. Even as to the years 1952–1954, relator has been content to rest on his own bare and unelaborated denials of Communist ties or activities. At the hearing he offered no witnesses to substantiate his testimony and he raised the shield of his constitutional privilege against all questions concerning the methods by which he may have dissociated himself from any previous Communist connections.

■ The Government did not offer oral testimony at the hearing to refute relator's contentions but chose instead to rely on the prima facie case established by the presumptive lawfulness of the Attorney General's action and the serious charges contained in the return.[6] This was entirely proper. Cf. United States

Potash, the statute has been twice changed.

The Internal Security Act of 1950 explicitly provided that the Attorney General in his discretion, may grant or deny bail. See Carlson v. Landon, 1951, 342 U.S. 524, 528, 539–540, 72 S.Ct. 525. The same discretion is explicitly provided for under the Immigration and Nationality Act of 1952, 8 U.S.C.A. § 1252 (a). The statute provides in part:

"Any * * * alien taken into custody [under the provisions of this Section] may, in the discretion of the Attorney General and pending * * * final determination of deportability, (1) be continued in custody; or (2) be released under bond in the amount of not less than $500 with security approval by the Attorney General, containing such conditions as the Attorney General may prescribe; or (3) be released on conditional parole. * * *"

6. See Note [2], supra.

ex rel. Nukk v. District Director of Immigration, supra, 205 F.2d at page 244.

 Clearly relator's unsupported word with respect to the last three years only is not enough, under the circumstances present, to overcome the presumptive lawfulness of the Attorney General's discretionary refusal of bail. This is particularly true in view of the serious charges against him of long and continuous participation and leadership in the Communist Party to recent date. The unlawful objectives of the Communist Party have been recognized by Congress. See Carlson v. Landon, supra, 342 U.S. at page 535–536, 72 S.Ct. 525.

 Furthermore, I cannot overlook that it has now been determined that relator is a deportable alien by reason of his membership in the Communist Party of the United States. A determination of deportability carries weight in considering the reasonableness of a denial of bail. United States ex rel. Potash v. District Director of Immigration, 2 Cir., 1948, 169 F.2d 747, 751.

Relator by his testimony and demeanor at the hearing on the writ fell far short of the mark in his attempt to overcome the Government's charges and to convince the Court by credible evidence that he is not an active Communist and that if released on bail he would not constitute a menace to the security of the United States.[7]

Approximately twenty years of undenied activity in the Communist Party was met by a simple denial of activity in the Party since 1952, wholly without any corroborative proof, and a refusal to affirm or deny (Fifth Amendment) his activity for all the years prior thereto.

Upon this state of the record before me and armed with the advantage of having observed the relator on the witness stand, I conclude that there has been a failure to establish that the Attorney General abused his discretion in denying bail.

The writ of habeas corpus is denied.

---

**7.** It is particularly to be noted that in his affidavit, dated April 26, 1954, relator states that "I am not and have not been for several years past a member of the Communist Party" and that "I have not now nor for the past several years engaged in any Communist activity." It is fair to infer that by such statements relator clearly admits that in the past he *was* a Communist Party member and *was* *engaged* in Communist activity. At the hearing on the writ, however, relator invoked the Fifth Amendment when asked whether he had been previously a member of the Communist Party or engaged in Communist activity.