**UNITED STATES ex rel. KWONG HAI CHEW v. SHAUGHNESSY, District Director of Immigration and Naturalization et al.**

United States District Court
S. D. New York.
June 5, 1953.

Ira Gollobin, New York City, for petitioner, Kwong Hai Chew.

J. Edward Lumbard, Jr., U. S. Atty., New York City (William J. Sexton, Asst. U. S. Atty., Lester Friedman, Attorney, Office of the District Counsel, Immigration and Naturalization Service, U. S. Dept. of Justice, New York City, of counsel), for the United States.

WEINFELD, District Judge.

Petitioner has been detained by the immigration authorities without bail since

March 1951. For more than two years of that time he was denied information as to the nature of the charges upon which his detention was based. He had been ordered excluded without a hearing as an alien whose entry was deemed prejudicial to the public interest[1] pursuant to 8 C.F.R. § 175.-57(b).[2] This aspect of relator's matter was passed upon by the Supreme Court of the United States,[3] which held that such detention was not authorized by that regulation.

Chew is a native and citizen of China. He first entered the United States in April 1941 as a seaman and remained here until November 1941, when he reshipped. From November 1941 until sometime in November 1945, he sailed in war zones. His status as a permanent resident was legalized as of January 10th, 1945.[4] In April 1950 he filed a petition for naturalization, which is still pending.

Chew is a seaman. In November 1950 he signed articles as chief steward on the S.S. Sir John Franklin, a vessel of American registry, with its home port in New York City. Immediately prior thereto, he had been screened and passed by the Coast Guard as a person whose presence aboard a merchant vessel of the United States would not be inimical to the security of the United States. When the S.S. Sir John Franklin on its return voyage reached San Francisco in March 1951, the immigration authorities ordered him "temporarily excluded" under 8 C.F.R. § 175.57 as an alien whose landing was deemed prejudicial to the United States. He was detained aboard the vessel and when it reached New York the Attorney General, acting under the aforesaid section, directed that his temporary exclusion be made permanent. The Attorney General refused the relator all information as to the nature of the accusation and an opportunity to be heard. His view was that the proceeding was an exclusion one, and his authority, the aforesaid section. The relator contended that the section was inapplicable to him as a permanent resident. His position was overruled both in the District Court[5] and the Court of Appeals.[6] The Supreme Court reversed,[7] and upheld his contention. It ruled that he was entitled to notice of the nature of the charge and a hearing.

The government attempted to commence hearings on March 31st, 1953, without serving a written notice of the charges against relator. An order was thereafter obtained from the District Court commanding compliance with the Supreme Court's mandate. On April 3rd, 1953, Chew for the first time was apprised in writing that he was excludable under § 1 of the Act of October 16th, 1918, as amended by the Internal Security Act of 1950, in that he was an alien who had been a member of the Communist Party

1. 8 C.F.R. § 175.53 defines categories of aliens whose entry is "deemed to be prejudicial to the interests of the United States."

2. "In the case of an alien temporarily excluded by an official of the Department of Justice on the ground that he is, or may be excludable under one or more of the categories set forth in § 175.53, no hearing by a board of special inquiry shall be held until after the case is reported to the Attorney General and such a hearing is directed by the Attorney General or his representative. In any special case the alien may be denied a hearing before a board of special inquiry and an appeal from the decision of that board if the Attorney General determines that he is excludable under one of the categories set forth in § 175.53 on the basis of information of a confidential nature, the disclosure of which would be prejudicial to the public interest."

3. Kwong Hai Chew v. Colding, 344 U.S. 590, 73 S.Ct. 472.

4. After service of a warrant of arrest, an order was entered in March 1948 by the Assistant Commissioner of the Immigration Service recommending that his deportation be suspended and following which on July 20, 1949, Congress passed a resolution favoring such suspension, 63 Stat. 1240, 1242. As a result he was admitted for permanent residence as of January 10th, 1945.

5. United States ex rel. Kwong Hai Chew v. Colding, D.C., 97 F.Supp. 592.

6. United States v. Colding, 2 Cir., 192 F.2d 1009.

7. 344 U.S. 590, 73 S.Ct. 472.

of the United States.[8] ·Specifically, he was charged with membership therein from 1945, through 1947. During the progress of the hearings the charge was enlarged to include membership from 1943 until 1950.[9] The hearings commenced on April 7th, 1953, continued a number of days thereafter and concluded on April 22nd. Four hundred and seventeen pages of testimony were taken. Relator was represented by counsel who cross-examined government witnesses.[10]

Three witnesses, former members of the Communist Party, testified that between 1945 and 1948, the relator was a member of the Communist Party of the United States, Waterfront Section; that he was a card-carrying and a dues-paying member, who attended closed meetings; that he distributed Communist literature; that in 1948 he was a candidate on the Communist Party slate of officers during the 1948 National Maritime Union election, which slate had been defeated.

Chew testified and categorically denied the charges. His wife, his two brothers-in-law and two sisters-in-law, all American-born citizens, testified they had no knowledge and no reason to believe that relator at any time had been a member of the Communist Party of the United States. The Special Inquiry Officer resolved the conflict of fact against Chew and found he had been a voluntary member of the Communist Party of the United States from at least some time in 1945 until some time in September 1948. Accordingly, he held that Chew was excludable from admission to the United States under the Act of October 16, 1918, as amended by the Internal Security Act of 1950.

The relator has appealed to the Board of Immigration Appeals. He contends that various substantial errors were committed by the Special Inquiry ,Officer sufficient to warrant a reversal of his decision and that whether or not he had a hearing which conformed with the requirements of due process can only be finally determined administratively by the Board of Immigration Appeals. An application to the District Director of Immigration and Naturalization for release on bail was denied. The present writ of habeas corpus essentially seeks relator's release upon bond pending his appeal. He urges that the denial of bail is arbitrary and capricious and a denial of due process in violation of the Fifth Amendment to the Constitution.

At the very outset the government denies the Court's power to consider the question of bail. It contends here, as it did in the Supreme Court, that the proceeding against Chew is an exclusion one. The government urges that in an exclusion proceeding the only applicable provision under which Chew may be released is § 212(d)(5) of the Immigration and Nationality Act, 8 U.S.C.A. § 1182(d)(5), which permits the Attorney General in his discretion to release on bond or otherwise persons applying for admission to the United States for "emergent reasons or for reasons deemed strictly in the public interest".[11] Noting that Chew has not presented evidence to the Attorney General that his release is necessitated by an emergency or that it will be in the public interest, the government takes the position that he may not seek judicial review of the Attorney General's failure to release him on bond or otherwise, particularly after an order of exclusion has been entered.

Chew, on the other hand, denies that this is an exclusion proceeding. He contends that under the Supreme Court ruling his status has been assimilated to that of a permanent resident alien "continuously residing and physically present in the United

8. Section 22, 8 U.S.C. (Supp. IV) § 137, U.S.Code Congressional Service 1950, p. 1001.

9. Minutes of hearing, p. 216.

10. The denial of a request that government witnesses be made available for cross-examination and the production of documents is assigned as substantial error.

11. Prior to the effective date of the new act there was no express statutory provision for the release of an excluded alien on bond pending exclusion proceedings and actual deportation under exclusion orders. United States ex rel. Chu Leung v. Shaughnessy, D.C., 88 F.Supp. 91.

States",[12] in consequence of which he is entitled to all the rights of such an alien—including the right to review an alleged arbitrary refusal by the Attorney General to grant bail pending deportation proceedings.

The government replies that the Supreme Court's holding is limited, that Chew is only entitled to notice of the charges and a hearing thereon—and this now having been accorded him, his rights have been fully expended.[13] Alternatively, the government's position is that, assuming arguendo the present proceeding must be equated to an expulsion proceeding, there has been no showing that the refusal of bail [14] was arbitrary or an abuse of executive power.

Because of the Supreme Court's detailed consideration of petitioner's situation, a close examination of its opinion is here necessitated. The Court construed 8 C.F.R. § 175.57 so as to avoid constitutional difficulties and held, therefore, that its provisions authorizing the denial of a hearing were not applicable to one in petitioner's situation. It said: "We do not regard the constitutional status which petitioner indisputably enjoyed prior to his voyage as terminated by that voyage. From a constitutional point of view, he is entitled to due process without regard to whether or not, for immigration purposes, he is to be treated as an entrant alien, and we do not now reach the question whether he is to be so treated." [15] "[Chew's] status as a person within the meaning and protection of the Fifth Amendment cannot be capriciously taken from him." [16]

The Supreme Court did not find it necessary to decide whether the proceeding against Chew was one of exclusion or expulsion. Upon argument of the writ before me, government counsel suggested that under the Supreme Court ruling Chew's matter is sui generis. I do not think it is necessary for the purposes of the present application to decide its precise nature. As I read the Supreme Court decision, its underlying rationale appears to be that the circumstance of his employment as a seaman on a ship of American registry did not break the continuity of his permanent residence so as to deprive him of those rights which clearly he enjoyed as an alien resident on terra firma.[17] Thus, the spirit of Kwong Hai Chew v. Colding leads me to hold that his rights are not limited simply to notice of the charges and a hearing thereon, but, rather, that encompassed within his assimilated status is also the right to question his alleged arbitrary detention without bail—a right accorded to every alien continuously residing here.[18] To deny Chew this would be to penalize him for following a gainful occupation—one recognized, incidentally, as not breaking his residence for naturalization purposes.[19]

This brings me to a consideration of the question of the circumstances under which the refusal to grant bail may be considered

12. 344 U.S. at page 596, 73 S.Ct. at page 477.

13. The government points to the fact that upon the conclusion of the hearings an order was entered in the District Court for the Eastern District of New York discharging the writ of habeas corpus in that proceeding on the ground that a hearing had been accorded relator in conformity with the mandate of the Supreme Court (order of May 1st, 1953).

14. See § 242(a) of the Immigration and Nationality Act, 8 U.S.C.A. § 1252.

15. 344 U.S. at page 600, 73 S.Ct. at page 479.

16. 344 U.S. at page 601, 73 S.Ct. at page 480, noted with approval in Shaughnessy v. U. S. ex rel. Mezei, 345 U.S. 206, 213, 73 S.Ct. 625.

17. Cf. "There is no lack of physical presence for jurisdictional purposes in the instant case." 344 U.S. at page 597, 73 S.Ct. at page 477, footnote 5.

18. Carlson v. Landon, 342 U.S. 524, 72 S.Ct. 525, 96 L.Ed. 547; United States ex rel. Potash v. District Director, 2 Cir., 169 F.2d 747; United States ex rel. Yaris v. Esperdy, 2 Cir., 202 F.2d 109.

19. Nationality Act of 1940, § 307(a), (d) (2), 8 U.S.C.A. § 707(a), (d) (2); see Kwong Hai Chew v. Colding, 344 U.S. 590, 601, 73 S.Ct. 472.

It should be noted, too, that this decision as to bail, like the decision as to

arbitrary.[20] The right of a resident alien with respect to the admission of bail was exhaustively examined in Carlson v. Landon. There the Court posed the issue before it thus: "May the Attorney General * * * after taking into custody active alien communists * * * continue them in custody without bail, at his discretion pending determination as to their deportability * * *?"[21] It held that he could, pointing out that the charges of present Communist membership and personal activity remained undenied. Indicating that the Attorney General's discretion can be overturned only on a clear showing of abuse, it said: "* * * evidence of membership [in the Communist Party] plus personal activity in supporting and extending the Party's philosophy concerning violence gives adequate ground for detention."[21A] "When in the judgment of the Attorney General an alien Communist may so conduct himself pending deportation hearings as to aid in carrying out the objectives of the world communist movement, that alien may be detained. * * * The authority to detain without bail is to be exercised within the framework of the Subversive Activities Control Act to guard against Communist activities pending deportation hearings."[22] Emphasis on membership plus present activity as constituting a menace to the public interest dominates the opinion.

There were four dissents in the Carlson case; the dissent of Mr. Justice Frankfurter is particularly useful for the light it throws on the majority opinion. Mr. Justice Frankfurter thought that the Attorney General had made "an abstract, class determination"[23] rather than "an individualized judgment" when he denied bail to the petitioners. As if in answer to this objection the majority noted that there was no evidence that all persons arrested as deportable for Communist membership were held without bail.[24] Elsewhere the majority said, "Detention is necessarily a part of this deportation procedure. Otherwise aliens arrested for deportation would have opportunities to hurt the United States during the pendency of deportation proceedings. Of course purpose to injure could not be imputed generally to all aliens subject to deportation, so discretion was placed by the 1950 Act in the Attorney General to detain aliens without bail * * *."[25]

Thus, what emerges from the Carlson case are the following criteria which may be applied in determining whether the Attorney General's refusal to grant bail was arbitrary in cases where the deportation charge is based on membership in, or affiliation with, the Communist Party or the other groups specified in 8 U.S.C.A. § 1251(a)(6)(C): (1) the Attorney General's denial must be based on the individual facts of each case and (2) upon evidence which could reasonably lead to the inference that the alien, if enlarged on bond, would "so conduct himself pending deportation hearings as to aid in carrying out the objectives of the world communist movement" thereby endangering the public interest; (3) present or continuing membership in the Communist Party and recent personal activity in supporting and extending its "philosophy concerning violence" is such evidence and sufficient to warrant detention without bail.[26]

Chew's right to notice and hearing, does not involve the extent to which "a resident alien's ultimate right to remain in the United States is subject to alteration * * * because of a voyage undertaken by him to foreign ports * * *." 344 U.S. at page 601, 73 S.Ct. at page 480.

20. § 242(a) of the Nationality Act of 1952, 8 U.S.C.A. § 1252(a).

21. 342 U.S. at pages 526–528, 72 S.Ct. at page 527.

21A. 342 U.S. at page 541, 72 S.Ct. at page 535.

22. 342 U.S. at page 544, 72 S.Ct. at page 536.

23. 342 U.S. at page 564, 72 S.Ct. at page 546.

24. 342 U.S. at pages 541–542, 72 S.Ct. 534–535.

25. 342 U.S. at page 538, 72 S.Ct. at page 533.

26. Also to be considered in reviewing the exercise of discretion by the Attorney

■ Absent the foregoing, to hold an alien without bail would amount to detention on the basis of "an abstract, class determination," which the Court in the Carlson case seemed desirous of avoiding. But the burden is upon the alien to show that the Attorney General's exercise of discretion "was without a reasonable foundation." [27]

■ The respondent urges that under the new Immigration and Nationality Act, which became effective on December 24th, 1952, the scope of judicial review even in the case of resident aliens is limited to cases where there has been a conclusive showing of unwarranted delay in determining deportability.[28] This contention has heretofore been advanced and it was rejected by the Court of Appeals for this circuit in United States ex rel. Yaris v. Esperdy, 2 Cir., 202 F.2d 109, 112, where it stated that the Attorney General's discretion "as to keeping an alien in custody is judicially reviewable to the same extent it was before" and that § 242(a) provides "but an added statutory recognition of a basis for judicial review, not a limitation upon the power as it had existed." Hence, the principles of the Carlson case and of United States ex rel. Potash v. District Director, 2 Cir., 169 F.2d 747, 751, noted with approval in Carlson, apply as before.

■■ In Chew's case there is no evidence of Communist Party membership or activity after 1948. Upon the hearing the government enlarged its charge to include membership from 1943 to 1950, but the Special Hearing Officer limited his finding to the years 1945 to September 1948. Thus the government failed to sustain its amended charge, which included the period from October 1948 to 1950. No evidence has been submitted in the proceeding of membership or activity in the Communist Party subsequent and up to March 1951, the date of Chew's detention, when the S.S. Sir John Franklin reached New York. And, of course, it would be idle to suggest that during his continued detention on Ellis Island from that date to the present he was engaged in any conduct inimical to the welfare of the United States. Hence, on this record there is no evidence that since September 1948 to date Chew was either a member of, or acted in, or on behalf of, the Communist Party, or that if released on bail he would so conduct himself as to imperil the national welfare.

In this connection it may be recalled that in November 1950, before his last sailing, he was screened and approved by the Coast Guard for employment as a seaman on a merchant vessel. The certificate would not have been issued if Chew's character and habits of life were deemed inimical to the security of the United States.[29] Also in 1949, in applying for suspension of deportation and admission to permanent residence, which was granted as of January 10th, 1945, it was necessary for him to prove his good moral character for the preceding five years.[30]

In effect, the government concedes that upon this record there is no proof of membership or activity in the Communist Party since September 1948, but contends in its return: "A vast amount of additional information concerning relator's subversive

General are the other factors set forth in United States ex rel. Potash v. District Director, 2 Cir., 169 F.2d 747, 751.

27. Carlson v. Landon, 342 U.S. 524, 541, 72 S.Ct. 525, 534.

28. § 242(a) of the Immigration and Nationality Act, 8 U.S.C.A. § 1252(a).

29. Executive Order No. 10173, U.S.Code Congressional Service 1950, p. 1661, as of October 18, 1950. Section 6.10–1, as it existed at tne time of Chew's clearance provided: "Issuance of documents and employment of persons aboard vessels. No person shall be issued a document required for employment on a merchant vessel of the United States nor shall any licensed officer or certificated man be employed on a merchant vessel of the United States if the Commandant is satisfied that the character and habits of life of such person are such as to authorize the belief that the presence of the individual on board would be inimical to the security of the United States * * *." 15 Fed. Reg. 7007.

30. § 19(c) of the Immigration Act of February 5, 1917, as amended, 62 Stat. 1206, 8 U.S.C. (Supp. V) § 155(c), U.S.Code Congressional Service 1948, p. 894.

56

activities has been made available to the Attorney General and his subordinate officers." This "vast amount of additional information" is not disclosed or made available to the Court. The record is singularly silent with respect thereto. The conclusory statement in the unverified return made by an attorney with the Immigration Service is not a substitute for the submission of facts which would enable the Court to determine whether or not there has been an abuse of discretion. "* * * [T]he * * * return, to be good, must state some fact upon which a reasonable person could logically conclude that the denial of bail is required to protect the country or to secure the alleged alien's presence for deportation should an order to that effect be the result of the hearing. * * * The imagination can hardly create a situation more incompatible with the spirit of our institutions than that one civil official's completely secret viewpoint could be the basis of sustained imprisonment." [31]

Chew testified before the Special Inquiry Officer and denied the basic charges against him.[32] His cross-examination was limited to the single question of whether he was or is a member of the Communist Party. His sworn denial has again been reaffirmed in the traverse to the return.[33]

There remains to be considered the additional factor set forth in the Potash case —the question of Chew's availability for subsequent proceedings if enlarged on bail. He is married to a native-born citizen. His work habits have been steady through the years, and except for his service at sea, he

has lived with his wife at one residence since their marriage in 1946. He has never been arrested or charged with any crime either in this country or in any other place. He registered for the draft in February 1942, and served in the United States Merchant Marine. No suggestion has been made that if released pending the final determination of his matter he will not respond to the directions of the appropriate authorities and make himself available at all times.

I conclude upon the facts presented that the denial of Chew's release on bond was an abuse of discretion. The writ is sustained to the extent of directing his enlargement on bond, as to the amount of which the Court invites suggestions from counsel upon settlement of the order.

Settle order on one day's notice.

31. Carlson v. Landon, 9 Cir., 186 F.2d 183, 189.

32. He also denied that he ran as a Communist in the 1948 National Maritime Union election. His explanation was that he had been invited to run for reelection for the office of patrolman on a slate as a representative of the Chinese seamen and he accepted on assurances that the slate would be successful; that later, he was asked to run on the so-called anti-Communist ticket, but felt he had already pledged himself to run on the opposition ticket. (Minutes of hearing, pp. 297–298.)

33. While recognizing that the determina-

tion of the fact issue was for the Special Inquiry Officer, these circumstances distinguish Chew's case from Carlson v. Landon, the Yaris case and United States v. Esperdy, 108 F.Supp. 640, 643. In the latter case, even though petitioners failed to testify and to deny "membership in the Communist Party at some period either several years ago or not stated at all", Judge McGohey held detention without bail was an abuse of discretion in view of the lack of allegation or proof that during the period between the first arrest and the second they engaged in any activity in support of the Communist doctrine.